Ahmed BHISKI, Petitioner

v.

John ASHCROFT, Attorney General of the United States; The United States Bureau of Citizenship and Immigration Services, Respondents.

No. 03–3291.

United States Court of Appeals, Third Circuit.

Argued May 3, 2004.

July 2, 2004.

---

Don W. Pak (Argued), Philadelphia, for Petitioner.

Peter D. Keisler, Assistant Attorney General Civil Division, Linda S. Wernery, Senior Litigation Counsel, William C. Minick (Argued), Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, for Respondent.

Before SLOVITER, FUENTES, and BECKER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Petitioner Ahmed Bhiski, a citizen of Tunisia, petitions for review of the decision of the Board of Immigration Appeals (BIA) dismissing his appeal of the Immigration Judge's (IJ) grant of voluntary departure and the BIA's denial of his Motion to Remand and Stay of Removal for adjustment of status based on a visa petition filed after Bhiski's marriage. We have jurisdiction to consider the petition for review under 8 U.S.C. § 1252(a)(1).

## I.

### *FACTS AND PROCEDURAL HISTORY*

Bhiski entered the United States on August 13, 1999, and soon acquired an F–1 student visa. When he stopped attending class at the Community College of Philadelphia, thus violating his F–1 status, the then-Immigration and Naturalization Ser-

vice (INS)[1] served him a Notice to Appear on May 8, 2002. On May 16, 2002, Bhiski appeared before the IJ without counsel. The IJ informed him that "[Y]ou have a right to be represented by a lawyer, but [neither] the United States Government nor this Court will provide that lawyer for you. If you want an attorney, I can postpone this case and give you time to seek an attorney. Do you understand that?" A.R. at 93. Despite not having an attorney present, Bhiski responded "yeah" when asked if he wanted to proceed on that day. A.R. at 93.

After having ascertained Bhiski's willingness to commence proceedings, the IJ began eliciting information from him. He asked Bhiski whether he had any relatives in the United States and whether he had any reason to fear returning to Tunisia, and then the IJ stated that he was "not authorized to permit [Bhiski] to remain in the United States." A.R. at 100. When the IJ discovered that Bhiski had a long-term girlfriend, Rose Mary Maturo, he explained that it would be difficult to convince the INS that his marriage was bona fide if he married her sometime before his voluntary departure date. The IJ nonetheless explained Bhiski's options in the event that he did marry:

You go by the INS. There's a big office [in Philadelphia], and, you know, show them the order, say you have to leave by July 1, I got married, can I get an extension of the voluntary departure. If they say no, then you got to get out of here and leave because if you get married, your girlfriend can petition for you, in other words, apply for you to get a green card, but it takes a while, and you would have to leave in the meantime, return to Tunisia and wait there patient-

---

1. The INS is now the Bureau of Citizenship and Immigration Services within the Department of Homeland Security. 6 U.S.C. § 271 (Supp.2004). Because the INS commenced the relevant proceedings, we will use INS herein.

ly, and then if it's granted, you would be issued an immigrant visa.

A.R. at 102.

The IJ then explained that Bhiski could not overstay his voluntary departure date:

You can't wait until the day before your—my voluntary departure expires and ask for an extension because it won't be given. You have to apply prior to the expiration of it at the INS in Philadelphia, and if they say yeah, that's okay, but if they say no, you got to get out. I'm also going to put a bond on you in the amount of $6,500. If you don't leave and you violate my order of voluntary departure, the money will not get returned to whoever paid it. They would lose that money, and the deportation order would be in effect, and if that occurs, even if you got married, you're going to probably be barred from coming back to this country for a number of years.

A.R. at 103. Bhiski indicated that he understood the IJ's explanations and warnings. The IJ set Bhiski's voluntary departure date as July 1, 2002, giving him 45 days after the hearing to "wrap up [his] affairs." A.R. at 101.[2]

On June 12, 2002,[3] shortly before his departure date, Bhiski married Maturo, and on June 13, 2002, the newly married couple filed an I–130 visa petition on his behalf based upon their marital relationship. A.R. 33–34. On June 14, 2002, Bhiski filed an appeal to the BIA, claiming

that the IJ violated his due process rights by proceeding without counsel. Bhiski then overstayed his departure date, and subsequently filed a Motion to Remand and Stay of Removal on January 28, 2003 to determine his application for the adjustment of status based on his visa petition.

On July 7, 2003, the BIA dismissed the appeal concerning the alleged due process violations, stating Bhiski "did not provide evidence on his notice to appeal of how his hearing was prejudiced by these alleged deficiencies. Furthermore, [Bhiski] did not provide the BIA with a brief detailing the factual and legal basis of his claims. Accordingly, we will dismiss" the appeal. A.R. at 2. The BIA also denied the motion for remand, stating that "[Bhiski's] case does not meet the requirements of *Matter of Velarde* ... because the Department of Homeland Security ... opposes his motion." A.R. at 2 (citations omitted).

In his petition for review, Bhiski argues that the BIA erred in dismissing his appeal because the IJ violated his due process rights when the IJ (1) failed to ensure that he was financially capable of leaving under voluntary departure, (2) failed to explain the consequences of voluntarily departing, and (3) proceeded with the hearing despite the absence of an attorney for Bhiski. Bhiski further argues that the BIA erred in denying his motion for remand because he met the test, formulated in *Matter of Velarde–Pacheco*, 23 I. & N.

---

2. It is unclear from the Administrative Record whether Bhiski's voluntary departure date has now expired without extension. On July 7, 2003, the BIA ordered that Bhiski be "permitted to voluntarily depart ... within 30 days from the date of this order or any extension beyond that time as may be granted by the district director." A.R. at 3. Whether or not Bhiski has sought such an extension does not affect our reasoning in this opinion.

3. The precise date of the marriage is unclear. The certificate of marriage issued by the Cherry Hill Township on June 27, 2002 lists the "Date of Marriage" as June 20, 2002. A.R. at 32. However, the I–130 visa petition filed by Maturo and Bhiski, and the letter submitted by Maturo, list the date of marriage as June 12, 2002. A.R. at 33, 42. As the date is irrelevant for the purposes of discussion, we will assume the June 12 date provided on the visa petition is the actual one.

Dec. 253 (BIA 2002), for determining immigration proceedings based on a marriage entered into after the commencement of proceedings.

## II.

### DISCUSSION

*A. Due Process Appeal*

█ Before turning to the merits of Bhiski's due process claims, we must decide whether we have the jurisdiction to do so. The Government argues that we lack jurisdiction because Bhiski's failure to provide a brief in support of his appeal to the BIA, and the cursory statement he provided on the Notice of Appeal to the BIA, amount to a failure to exhaust his administrative remedies. Exhaustion is a jurisdictional prerequisite, as Section 1252(d) of Title 8 of the United States Code states, "A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right...." *Id.* Whether the failure to file a brief in support of a Notice of Appeal before the BIA bars our review is an issue of first impression for this court.

Four courts of appeals have previously decided the issue, with two courts on each side of the jurisdictional fence. The Court of Appeals for the Fifth Circuit held that it was without jurisdiction to hear an appeal that otherwise appeared as though it had substantial merit because the alien's failure to provide a brief or exceed "generalized statements of the reasons" for the appeal before the BIA was tantamount to a failure to exhaust his administrative remedies. *Townsend v. INS,* 799 F.2d 179, 181–82 (5th Cir.1986) (internal quotation marks and citation omitted). The Court of Appeals for the Eleventh Circuit followed the example of the Fifth Circuit and found persuasive the argument that "because the

petitioners failed to perfect their appeal to the Board, judicial review is barred because they have not exhausted their administrative remedies." *Bayro v. Reno,* 142 F.3d 1377, 1378–79 (11th Cir.1998).

The Courts of Appeals for the Ninth and First Circuits disagree. *See Ladha v. INS,* 215 F.3d 889 (9th Cir.2000); *Athehortua–Vanegas v. INS,* 876 F.2d 238 (1st Cir.1989). *Athehortua–Vanegas* is the more comprehensive of these decisions. It observed that in failing to file a brief to accompany the notice of appeal, the alien "did not overlook the Board, or ignore it, or attempt to appeal directly to the courts from the IJ's order. He ... [merely] stumbled on [the step]." *Athehortua–Vanegas,* 876 F.2d at 240. The court held that because the alien actually availed himself, however clumsily, of the appeal, he exhausted the remedy, and no longer had administrative recourse. *Id.*

Even if we were to follow the Eleventh and Fifth Circuits in holding that a brief is required to perfect the BIA appeal, it would be unduly harsh to so hold in this case where Bhiski made some effort to exhaust, albeit insufficient. However, we will not so hold because there is nothing in the regulatory scheme that compels that conclusion.

First, the regulation governing the Notice of Appeal does not require the filing of a brief beyond identifying the specific reasons for the appeal. The applicable regulation states,

> The party taking the appeal must identify the reasons for the appeal in the Notice of Appeal (Form EOIR–26 or Form EOIR–29) or in any attachments thereto, in order to avoid summary dismissal pursuant to § 1003.1(d)(2)(i). The statement must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged.

If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified.

8 C.F.R. § 1003.3(b).

In addition, that regulation provides that the appellant "must also indicate in the Notice of Appeal ... whether he or she desires oral argument before the Board and whether he or she will be filing a separate written brief or statement in support of the appeal." *Id.* The fact that the regulation requires the alien to indicate whether s/he will be filing a brief certainly suggests that filing a brief is optional rather than mandatory.

Second, the Notice of Appeal Form EOIR–26 itself indicates the optional nature of the brief. The form includes a warning provision in box four, which states:

The failure to specify the factual or legal basis for the appeal *may* lead to summary dismissal without further notice, unless you give specific details in a timely separate written brief or statement filed with the Board.

Form EOIR–26 (emphasis added).

Third, the inclusion of the word "may" suggests that the agency believes that a brief is not necessary in all cases. In another case, the BIA stated:

It is ... insufficient to merely assert that the immigration judge improperly found that deportability had been established or denied an application for relief from deportation. ... [I]t should be clear whether the alleged impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards. ...

Although the regulations only refer to the reasons that must be stated on the Notice of Appeal, the contentions made by an alien on appeal are of course best presented in a brief setting forth his arguments. *Depending on the complexity of the issues raised, a brief may be essential to an adequate presentation of the appeal.* In all cases, however, the reasons for an appeal must be meaningfully identified on the Notice of Appeal.

*Matter of Valencia,* 19 I. & N. Dec. 354, 355 (BIA 1986) (emphasis added).

This suggests that if the issue is not complex, no brief is required as long as the notice of appeal does precisely what it is intended to do—place the BIA on notice of what is at issue.

In the instant case, the Notice of Appeal filed by Bhiski does that. It stated,

(1) Due to conditions of detainment, [Bhiski] was *unable to obtain effective legal representation. Therefore, [he] claims a violation of due process.*

(2) [Bhiski] was only permitted to make collect calls from prison, and spoke to an acquaintance of another inmate about hiring an attorney. [Bhiski] was led to believe that an attorney was, in fact, retained, however, no attorney ever appeared at [his] removal hearing. *Therefore, [he] claims ineffective assistance of counsel.*

A.R. at 88 (emphasis added).

Although the Government contended at oral argument that this Notice of Appeal was insufficient because it failed to aver the prejudice Bhiski suffered, it certainly was sufficient to make the BIA aware of precisely what issues were being appealed. Whether or not the Notice of Appeal was sufficiently compelling to convince the BIA has nothing to do with whether Bhiski adequately presented the appeal for administrative exhaustion purposes. Bhiski's claim is not so complex that it would have required a brief. Therefore, we hold that

the failure to provide a brief does not foreclose our review.

 Having decided we have the jurisdiction to do so, we turn now to the merits of Bhiski's due process claim.[4] "It is well-established that an alien at an immigration hearing has some form of right to counsel." *Ponce–Leiva v. Ashcroft,* 331 F.3d 369, 374 (3d Cir.2003). However, we need not delve into the complexity that lays underneath the phrase "some form of right" because in the instant case, Bhiski expressly waived any such right, as shown in the following exchange:

> IJ: Mr. Bhiski, you have a right to be represented by a lawyer, but [neither] the United States Government nor this Court will provide that lawyer for you. If you want an attorney, I can postpone this case and give you time to seek an attorney. Do you understand that?
>
> Bhiski: Yes, sir.
>
> IJ: Do you want an attorney?
>
> Bhiski: I did. I called my friend who called for lawyer for me.
>
> IJ: So you want to wait to see if your friend gets you a lawyer?
>
> Bhiski: Not a problem, sir. You can— no problem. You can like-
>
> IJ: Do you want to proceed today?
>
> Bhiski: Yeah.
>
> IJ: Okay. You will proceed today with no lawyer, right?
>
> Bhiski: [no audible response]

A.R. at 93–94. In his petition for review, Bhiski relies on his final "no audible response" to argue that his waiver was equivocal. This is too flimsy a foundation on which to base a claim of violation of due process inasmuch as the IJ asked Bhiski three times if he wanted to proceed without counsel and Bhiski responded three times in the affirmative immediately before the final non-response.

 Assuming *arguendo* that this does not constitute a waiver, a review of the Administrative Record reveals no due process violation resulting from proceeding without counsel or failing to explain to Bhiski the consequences of overstaying the departure date. With regard to the absence of counsel, we have previously examined the failure to enter a continuance absent counsel under an abuse of discretion standard. *Ponce–Leiva,* 331 F.3d at 375 (finding that there was no abuse of discretion in denying a continuance given the failure of the alien to obtain counsel). There was no such abuse of discretion here.

The IJ asked Bhiski whether he had any relatives in the United States, presumably to uncover the potential for an immediate relative petition, and Bhiski responded that he did not. The IJ also asked whether Bhiski feared returning to Tunisia, presumably to investigate possible asylum claims, and again Bhiski responded that he had no such fears but that he would be leaving behind his girlfriend. The absence of either relatives or a fear of return left Bhiski ineligible for anything other than voluntary departure, as the IJ noted.

Bhiski argues it "is reasonable to assume that an IJ, who is experienced in these types of cases, would recognize that [Bhiski] had an opportunity to adjust his status through his relationship with [his

---

4. Bhiski raises three due process claims in this petition for review: that the IJ erred in (1) failing to ensure he was financially capable of leaving for Tunisia; (2) failing to explain the consequences of voluntarily departing; and (3) proceeding with the hearing despite the absence of counsel. The first due process argument is not discernible in the Notice of Appeal to the BIA. Because it cannot be said to have been presented to the BIA, we are without jurisdiction to hear it and will not discuss it in this opinion.

girlfriend] Ms. Maturo, a [United States Citizen]." Pet. Br. at 24. He further claims that his common law marriage to Maturo would have been sufficient to enable him to apply for an adjustment of status. There are several reasons why this is unconvincing. First, the Government represented during oral argument that a common law marriage, without a ceremonial marriage, would not make Bhiski eligible for a spouse visa petition, and Bhiski provided no precedent supporting his contention that a common law marriage is a sufficient basis for such petition. Second, when the IJ asked Bhiski if he was married, he responded "No, I'm single." A.R. at 98. Bhiski also referred to Maturo throughout the proceedings as his girlfriend, and did not object to the IJ's doing so as well. This does not comport with Maturo's assertion that "[She and Bhiski] are always together just like a married couple. I had told all my friends we had gotten married so that nobody can say we didn't call our self Husband and Wife." A.R. at 42. Finally, the hearing was held on May 16, 2002, but according to Maturo's own letter, she did not agree to marry Bhiski until April 2002, which was roughly a year after he first asked her and only a month before the hearing. A.R. at 42. Given Bhiski's "I'm single" response and the letter submitted by Maturo, there is no reason to think counsel could have successfully used the alleged common law marriage, to the extent there was one, to avoid voluntary departure.

The Administrative Record clearly contradicts Bhiski's claim that the IJ did not alert him to the consequences of failing to honor the voluntary departure date. The IJ first explained the difficulty of changing his departure status based upon a subsequent marriage to Maturo by stating, "[I]f you got married right now, the INS will presume you did it for fraudulent purposes just to get your green card to try to avoid deportation. Now, you can show that that's not true, but it's not ... an easy thing to do." A.R. at 101. Second, the IJ explained in detail how Bhiski could go about seeking an extension of his voluntary departure date and having Maturo petition for his immigration in the event he did get married, but cautioned that "it takes a while, and you would have to leave in the meantime, return to Tunisia and wait there patiently, and then if it's granted, you would be issued an immigrant visa." A.R at 102. Finally, the IJ made clear that if Bhiski overstayed his departure date, he would lose the bond posted in the amount of $6,500, and he would "probably be barred from coming back to this country for a number of years." A.R. at 103. We fail to see how counsel could have explained the consequences more clearly than the IJ.

This was not a proceeding in which the IJ addressed the alien's concerns in a cursory or impatient manner; indeed, the IJ's explanation of Bhiski's options was commendably comprehensive. Accordingly, although we conclude that we have jurisdiction to hear Bhiski's due process claims, despite the absence of a brief in support of his appeal before the BIA, we agree with the BIA's conclusion that Bhiski "did not provide evidence on his notice of appeal of how his hearing was prejudiced by the alleged deficiencies," A.R. at 2, because a review of the Administrative Record reveals no such evidence. Furthermore, the record contains Bhiski's express waiver of his right to counsel. We will deny the petition for review on these grounds.

B. *Motion to Remand under* Matter of Velarde–Pacheco

■ On January 28, 2003, during the pendency of his due process appeal to the BIA, Bhiski filed a Motion to Remand and

Stay of Removal,[5] based on the outstanding visa petition he and his wife filed on June 13, 2002. *Matter of Velarde–Pacheco* affords aliens "the opportunity to apply for adjustment of status when their application is based upon an unadjudicated visa petition." A.R. at 2. A motion to reopen for adjustment of status based on a marriage entered into after the commencement of proceedings may be granted

> where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I. & N. Dec. 541 (BIA 1996), or on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the [alien's] marriage is bona fide; and (5) *the Service either does not oppose the motion or bases its opposition solely on Matter of Arthur* . . . .

*Matter of Velarde–Pacheco*, 23 I. & N. Dec. at 256 (emphasis added). In *Matter of Arthur*, 20 I. & N. Dec. 475 (BIA 1992), the BIA held that a motion to reopen could not be granted on the ground of a pending unadjudicated relative petition based on subsequent marriage.

▇ The INS opposed the Motion to Remand on the ground that Bhiski was ineligible for adjustment of status both because of his failure to depart and his failure to submit clear and convincing evidence of a bona fide marriage. Both reasons amount to a non-*Matter of Arthur* opposition; thus the BIA was correct in noting that "because the Department of Homeland Security . . . opposes his motion," Bhiski is ineligible for relief under *Matter of Velarde–Pacheco*. A.R. at 2.

▇ In the instant case, the INS's opposition to the motion subsumes prongs (3) and (4) of the *Matter of Velarde–Pacheco* inquiry. Bhiski's statutory ineligibility for failing to depart by his voluntary departure date is specifically a procedural bar under prong (3) and *Matter of Shaar*, 21 I. & N. Dec. 541, 542, 548–49 (BIA 1996) (holding that an alien who overstays a voluntary departure date after filing a motion to reopen during the pendency of the voluntary period is ineligible for the suspension of deportation "absent very limited exceptional circumstances"). His ineligibility based upon his failure to provide "clear and convincing evidence" of a bona fide marriage directly overlaps with prong (4). Nothing in *Matter of Velarde–Pacheco* suggests that the INS's opposition cannot overlap with the other factors of its test, so long as the opposition is not based on *Matter of Arthur*. Furthermore, Bhiski argues that we should have jurisdiction to investigate the good faith validity of the INS's opposition, but again nothing in *Matter of Velarde–Pacheco* suggests that the INS's opposition needs to be in good faith.[6] As long as the INS opposes the

---

5. While Bhiski presented the motion as a motion to remand, the BIA, Bhiski, and the INS have treated the motion as a motion to reopen the proceedings under *Matter of Velarde–Pacheco*, 23 I. & N. Dec. 253 (BIA 2002). We will do the same, although we will refer to Bhiski's motion as the "Motion to Remand."

6. A review of the Administrative Record illustrates the facial legitimacy of the INS's objections. Because Bhiski failed to depart by his voluntary departure date, he is ineligible for relief for a period of ten years. A.R. at 14

(citing 8 C.F.R. § 240.26(a)). Furthermore, a motion to reopen for the adjustment of status should not be granted when the alien is subject to a statutory bar. *Matter of Shaar*, 21 I. & N. Dec. at 542–49. With regard to the bona fide nature of Bhiski's marriage, we note that the evidence submitted in support of the marriage is dated after Bhiski's May 16, 2002 hearing at which his voluntary departure order was given. A.R. at 32 (Certificate of Marriage dated June 27, 2002); A.R. at 36 (Joint Residential Lease dated June 1, 2002);

motion on non-*Matter of Arthur* grounds, the alien does not fall within the exception carved out by *Matter of Velarde–Pacheco*. Accordingly, the BIA did not err in denying Bhiski's Motion to Remand.

We will therefore deny the petition for review as it concerns this motion.

### III.

### CONCLUSION

For the foregoing reasons, we will deny the petition for review both as to the due process appeal and as to the Motion to Remand.

A.R. at 38 (Checks Issued from Joint Account dated no earlier than November 30, 2002);

A.R at 42 (Letter from Maturo attesting to Marriage dated January 16, 2003).