

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2004

# Yang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3931

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Yang v. Atty Gen USA" (2004). *2004 Decisions.* Paper 498.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/498

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

NO. 02-3931

———

XING CHAN YANG,
                    Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES

———

Petition for Review of an Order
of the Board of Immigration Appeals
(A70-899-611)

———

Submitted Under Third Circuit LAR 34.1(a)
December 1, 2003

Before:  SLOVITER, ALITO and FRIEDMAN*, Circuit Judges

(Filed  July 16, 2004)

———

OPINION OF THE COURT

————————————

\*      Hon. Daniel M. Friedman, United States Senior Circuit Judge for the
Federal Circuit, sitting by designation.

SLOVITER, Circuit Judge.

Petitioner Xing Chan Yang has filed a Petition for Review of the decision of the Board of Immigration Appeals ("BIA") summarily affirming the decision of the Immigration Judge ("IJ") denying his request for asylum and withholding of removal. Specifically, Yang challenges the IJ's conclusion that it could not rely on documents presented by Yang showing that he had entered into an uxorilocal marriage with his wife, Xiu Lan Wang, resulting in their children bearing the last name of his father-in-law and wife. Yang also challenges the IJ's refusal to hold a subsequent hearing to allow Yang to introduce expert witnesses that would testify to the practice of uxorilocal marriages in China, the IJ's rejection of Yang and Wang's oral testimony regarding their uxorilocal marriage, the IJ's finding of Yang as an incredible witness, and the BIA's decision to summarily affirm the IJ's decision in his case. For the following reasons, we will grant Yang's petition for review, vacate the BIA's order, and remand.

## BACKGROUND

Because we write solely for the parties before us, we will limit our discussion of the background facts. According to Yang and Wang, they married in the People's Republic of China on November 15, 1980, but did not register their marriage with the local authorities until April 26, 1990. The couple has two children: a son named Ci Feng Wang, born April 9, 1983, and a daughter named Xiu Fang Wang, born February 24, 1986. Yang entered the United States without proper documentation on or about January

2

2, 1990, and was subsequently placed in removal proceedings by the then-named Immigration and Naturalization Service ("INS"). Yang then applied for asylum, restriction of removal, withholding of removal, and voluntary departure.

Yang states in his asylum application that less than a month after the birth of his second child, his wife was taken by ten local government cadres to a hospital in Guantou and forcibly sterilized. Yang then paid a fine of RMB 50 yuan "due to over birth" in 1987. A.R. at 612. Yang stated that in 1991 his family was further assessed a fine of RMB15,000 yuan for violating China's family planning policy, which his wife could not afford to pay. A.R. at 612. He then "took an opportunity and left China in 1991," and was followed by Wang in 1994. A.R. at 612.

During a hearing in the Immigration Court, the IJ questioned why Yang's children had his wife's last name, Wang, rather than his own. Yang explained that in rural areas of China, when a wife's father has no male children as heir, it is customary for the son-in-law to be adopted into his household so as to perpetuate the father-in-law's family name. Because he was adopted by his father-in-law in accordance with this tradition, his children have taken Yang's father-in-law's surname.

Yang also furnished certain documentary evidence to the IJ that purported to establish that: (1) Yang and Wang were lawfully married, (2) they had two natural children, (3) Yang's wife was sterilized against her will for violating the family planning policy, (4) they were fined for excess child birth, and (5) they fled to the United States to

3

avoid further persecution. The documents included a marriage certificate, two birth certificates, a family register, and a notice of a fine due to violation of the family planning policy in the amount of RMB 15,000 yuan.

The IJ, however, found the documents submitted by Yang to be incredible because Yang "has not had the documentation certified by the American consulate pursuant to [8 C.F.R. §] 287.6." A.R. at 150. The IJ stated:

> The State Department report advises the Court that I cannot rely on any documentation with regard to family registers or birth certificates coming out of Fujian unless they have been properly certified. . . . Therefore notwithstanding [Yang's] explanation and the explanation of his wife, the Court still does not know why the last names of the children are different than the last name of [Yang]. Naturally if these were not his children, [Yang] would not have a bonafided [sic] claim to political asylum in so far as the basis of that claim, having had two children in China and being subject to the birth control policy, would no longer exist.

A.R. at 150. The IJ further ruled that because Yang was not a credible witness "based on the discrepancies in his testimony, [and] based on the discrepancies in the application for asylum," he

> would thus require that the documentation that has been submitted to the Court be certified, which is has not [sic]. The Court cannot find that I have [sic] any evidence at all which is reliable in the form of documentary evidence, which would reflect that [Yang] is married nor that he has two children who have a different surname than [his] and that this is due to the fact that he was adopted into the household of his wife.

A.R. at 155-56. The IJ therefore rejected Yang's application for asylum because Yang had "not established a well-founded fear of persecution as defined if he were returned to the People's Republic of China." A.R. at 156. The IJ also denied Yang's application for

restriction of removal, withholding of removal, and voluntary departure. The BIA then summarily affirmed the IJ's decision under 8 C.F.R. § 3.1(a)(7) (2002).

## DISCUSSION

We have jurisdiction to review decisions of the BIA under 8 U.S.C. § 1252. When the BIA summarily affirms the IJ's decision without opinion, we review the IJ's decision. See Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003).

A well-founded fear of persecution is a factual determination reviewed under the deferential substantial evidence standard. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001) (citing INS v. Elias-Zacarias, 502 U.S. 478 (1992)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998)).

Yang, as an initial matter, challenges the BIA's decision to apply the streamlining regulations, 8 C.F.R. § 1003.1(a)(7) (formerly 8 C.F.R. § 3.1(a)(7)), and summarily affirm the IJ's decision in this case. Yang contends that his case is not an appropriate one for summary affirmance because existing BIA precedents favor Yang's arguments in his appeal to the BIA, and because the IJ's adverse credibility determination is not supported by substantial evidence. The Government argues that we lack jurisdiction to review the BIA's decision to apply the streamlining regulations in a particular case.

The BIA's decision to apply the streamlining regulations to a particular case is a

5

matter committed to its discretion and is unreviewable. But as we explained above, we have jurisdiction to review the IJ's decision as the final agency determination. Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003).

The IJ denied Yang's application for asylum on the ground that he "cannot find that [Yang] has been a credible witness nor that he has presented a credible case for asylum," and that Yang "has not established a well-founded fear of persecution." A.R. at 156. He based this finding of adverse credibility largely on the facts that the documentary evidence that Yang presented to establish his uxorilocal marriage and his paternal relationship with his children were not properly certified by the local United States Consulate in China pursuant to 8 C.F.R. § 287.6, that various differences exist between Yang's oral testimony in court and the information presented in his asylum application, and internal inconsistencies within his oral testimony itself.

In Liu v. Ashcroft, No. 02-4334, slip. op. (3d Cir. June 24, 2004), we dealt with the issue of whether an IJ may exclude documentary evidence from review solely because the evidence was not certified pursuant to 8 C.F.R. § 287.6. Responding to our request for further agency guidance on the scope of section 287.6, the Government, citing with approval Khan v. INS, 237 F.3d 1143 (9th Cir. 2001), and Georgis v. Ashcroft, 328 F.3d 962 (7th Cir. 2003), explained in Liu that "8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge." Id. at 5 (internal quotation marks and citation omitted). We then accepted the

6

Government's interpretation of section 287.6 and ruled that the Lius should have been allowed the opportunity to prove the authenticity of the documentary evidence they presented through other means. Id. We also ruled that because the documentary evidence, if found genuine, would corroborate the Lius' oral testimony, the exclusion of the documentary evidence affected the IJ's adverse credibility determination in that case. Id. at 6. We therefore remanded the case so that the BIA could reconsider and reweigh the facts and evidence in light of our opinion. Id. at 8.

Here, although the IJ cited the State Department's Country Report of China in stating that "the Court must be on guard . . . with regard to any and all documentation coming from China, especially Fujian province which apparently is replete with fraud" and that "I cannot rely any documentation with regard to family registers or birth certificates coming out of Fujian unless they have been properly certified," A.R. at 150, it is clear that the IJ excluded documents offered by Yang to establish his uxorilocal marriage on the ground that the documents were not certified pursuant to 8 C.F.R. § 287.6. A.R. at 155 ("I would thus require that the documentation that has been submitted to the Court be certified, which is [sic] has not."(emphasis added)). The State Department report, in fact, did not state that the only method for establishing that a document from Fujian is bona fide is through certification by the local American consulate, only that fabrication and fraud is prevalent throughout the region. See A.R. at 374-75. In light of our decision in Liu, where we accepted the Government's

7

interpretation of section 287.6 as a nonexclusive method for authenticating documentary evidence, the IJ's rejection of the documentary evidence on only section 287.6 grounds constitutes legal error. See Liu, slip op. at 6.

We also conclude that the IJ's erroneous evidentiary ruling was not harmless. As the Government itself noted, "This case . . . turns on the immigration judge's finding that Yang's testimony was uncorroborated." Respondent's Br. at 36. The Government also conceded that "the record appears to show that Wang's testimony tracks with Yang's concerning their marriage and children, Yang's adoption into Wang's family, and the alleged incidents that led to Yang seeking asylum in the United States." Respondent's Br. at 35. In other words, had the IJ not summarily rejected the documentary evidence offered by Yang and considered alternative methods for authentication, the documentary evidence could have served to corroborate the largely consistent oral testimony offered by Yang and his wife. The IJ, in fact, stated that Yang "has in the considered opinion of the Court engaged in fraudulent testimony and the submission of fraudulent documentation in order to support his case," A.R. at 157, which the Government believes was "premised, in part, on his determination that the documents Yang submitted from China to support his asylum claim were not properly authenticated pursuant to 8 C.F.R. § 287.6." Respondent's Br. at 36. The IJ's misapplication of section 287.6, therefore, clearly affected his adverse credibility finding against Yang.

We reject the Government's argument that the authentication issue is not before us

8

because Yang allegedly did not raise it before the BIA. Yang's Notice of Appeal to the BIA did state that he and his wife "ha[d] established by testimony and documentary evidence that [Yang's] wife was forcibly sterilized under the coercive family planning policy of China," and that "[t]he IJ's credibility finding is not supported by substantial evidence." A.R. at 136. It is also clear from his appellate brief to the BIA that Yang had subsumed the section 287.6 issue into his broader argument that the IJ's adverse credibility finding was not based on substantial evidence; the brief, for example, challenges the IJ's finding on the uxorilocal marriage issue, which is precisely the issue for which Yang offered documentary evidence. A.R. at 12. As we stated in <u>Bhiski v. Ashcroft</u>, No. 03-3291, slip. op. at 4-6 (3d Cir. July 2, 2004), so long as Yang made some effort, however insufficient, to place the BIA on notice of the issue being raised before it, Yang is deemed to have exhausted his administrative remedies. Because Yang's Notice of Appeal to the BIA sufficiently placed the BIA on notice that Yang is challenging the IJ's adverse credibility finding, including his rejection of documentary evidence under section 287.6, Yang adequately exhausted his administrative remedies.

Finally, we note that the IJ had also pointed out several inconsistencies within the testimonies from Yang and his wife, as well as contradictions between the oral testimonies and Yang's asylum application, to support his overall adverse credibility finding. Some of the inconsistencies, such as dates for the overbirth fines and Yang's entry into the United States, are not sufficiently consequential to amount to substantial

evidence to support an adverse credibility finding. Other questions raised by the IJ in his oral opinion, such as the existence of the uxorilocal marriage and the use of the maternal family name for Yang's two children, would have been corroborated by documentary evidence presented by Yang if such evidence were found to be genuine through other means of authentication.

Because we find that the IJ's refusal to accept the proffered documentary evidence solely for the lack of authentication under 8 C.F.R. § 287.6 significantly contributed to his adverse credibility finding against Yang, we will grant Yang's petition for review, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.