**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2678

———

QIAO LIN,
Petitioner

v.

\* ALBERTO R. GONZALES, Attorney General of the United States,

Respondent

\* Substituted pursuant to Fed. R. App. P. 43c.

On Appeal from the United States Department of Justice
Board of Immigration Appeals
(BIA No. A77-957-568)

Submitted pursuant to Third Circuit LAR 34.1(a)
on July 15, 2005

———

Before: ALITO, VAN ANTWERPEN, and ALDISERT, Circuit Judges.

(Filed: July 15, 2005)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Petitioner Qiao Lin, a native and citizen of the People's Republic of China, seeks

review of the decision of the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of her application for asylum, withholding of removal, and protection under the Convention Against Torture. The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b). We have jurisdiction pursuant to 8 U.S.C. § 1252 and will affirm.

## I.

Ms. Lin entered the United States through the Los Angeles International Airport on May 12, 2001 and was placed in removal proceedings six days later. She submitted an application for asylum on November 8, 2001, the original date of her merits hearing. To allow her time to certify for authentication any Chinese-language documents that she might proffer at her merits hearing, the IJ granted Petitioner a continuance until December 2, 2002. After that hearing, the IJ denied Ms. Lin's application. The BIA affirmed the IJ's decision without opinion on May 21, 2004. This petition followed.

## II.

Petitioner testified at her merits hearing that her sole ground for asylum was her concern that she might be arrested by police due to her practice of Falun Gong.[1] She testified that she had started practicing Falun Gong in early 1999; that she practiced it in parks once every week or two; and that, in addition to practicing, she distributed pamphlets describing

---

[1] We have previously observed that Falun Gong "'blends aspects of Taoism, Buddhism, and the meditation techniques of Qigong (a traditional [Chinese] martial art) with the teachings of Li Hongzhi.'" *Gao v. Ashcroft*, 299 F.3d 266, 267 (3d Cir. 2002) (citing U.S. Dep't of State, Human Rights Report for 1999, China, February 25, 2000). The Chinese government has declared Falun Gong illegal, and has reportedly subjected its followers to various forms of persecution. *See Gao*, 299 F.3d at 268.

Falun Gong by passing them out on several streets near the parks where she practiced. As for her concerns about the police, Petitioner testified that in late 2000 two of her friends were arrested for distributing Falun Gong pamphlets. Petitioner said this caused her to stop distributing the pamphlets a month later, in late March 2000, for fear of being arrested herself. She testified that when these two friends were later sentenced to a year in prison in January 2001, she quit her job as a gym teacher in Fuzhou City and fled to her aunt's home in a rural area of China. Petitioner testified that she remained concerned that she would be arrested because other Falun Gong members she knew were arrested for distributing pamphlets in Fuzhou City around this time.

The only problems Petitioner claimed to have with police after her relocation to her aunt's home occurred when her father reported to her in June 2001, and perhaps again in December 2001, that police had come looking for her in Fuzhou City in late March 2001, and again in June 2001, the latter time with an arrest warrant in her name. On this point, there were some discrepancies between Petitioner's testimony, her responses to questions from the IJ, and her sworn statement made upon her arrival at Los Angeles International Airport when she first entered the United States. Finally, Petitioner also testified that she did not want to return to China because she would not have a job and because she still feared arrest.

Petitioner did not offer corroborating testimony through any other witnesses. In addition to her own testimony, Petitioner submitted four Chinese-language documents to the IJ, including what was alleged to be a warrant for her arrest dated June 29, 2001. Despite the

3

eleven-month continuance affording her time to have these documents certified pursuant to 8 C.F.R. § 287.6, Petitioner had not done so, and the IJ did not consider the documents.

## III.

Petitioner's first contention is that substantial evidence supports neither the IJ's adverse credibility determination nor the IJ's alternative findings that she failed to establish persecution or a well-founded fear of persecution. Because the BIA affirmed the IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Our review is limited to determining whether there is substantial evidence to support the IJ's decision. *Id*. at 247. We may not reverse an IJ's credibility determination or findings of fact unless we conclude that "any reasonable adjudicator would be compelled to conclude to the contrary" of the IJ's decision. 8 U.S.C. § 1252(b)(4)(B); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Accordingly, "to obtain judicial reversal . . . , [Petitioner] must show that the evidence [s]he presented was so compelling that no reasonable fact finder could fail to find" for her. *Elias-Zacarias*, 502 U.S. at 483-84; *see also Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003). Pursuant to § 1158(b)(1)(B)(iii) of the REAL ID Act of 2005, Pub. Law No. 109-13 (May 11, 2005), inconsistencies, inaccuracies, or falsehoods identified by an IJ giving rise to an adverse credibility determination may be now be made "without regard" to whether they "go[] to the heart of the applicant's claim." *Cf. Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Rather, new Section 1158(b)(1)(B)(iii) states:

(iii) Credibility Determination– Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

§ 1158(b)(1)(B)(iii). Here, the IJ identified three specific discrepancies. *First,* the IJ found, Petitioner testified at her hearing that she did not know that police had come looking for her prior to her May 2001 departure from China, but in a sworn statement made to an immigration officer at Los Angeles International Airport, she had stated that the "Public Security Council" had come to arrest her on March 28, 2001 and again at "the end of April." *Second,* the IJ found, when asked about this discrepancy on cross-examination, Ms. Lin stated only that "[t]he police officers in China . . . come to my father's house look for me [sic] one day and they couldn't find me then they'll come the next day, and then they come the next day. So they come many days." *Third*, the IJ found, Ms. Lin gave inconsistent testimony as to when she spoke with her father and learned of alleged visits to him by police concerning her. Here, the IJ found discrepancies in response to his questions as to whether

she spoke with her father in December 2001, on June 7, 2001, or both; and whether they discussed an alleged June 29, 2001 arrest warrant in her name, a March 2001 police visit, a June 29, 2001 police visit, or all three. In the absence of any corroborating testimony, the IJ concluded that Petitioner was not credible given the discrepancies between and among her testimony, her sworn airport statement, and her responses to the IJ's questions.

Mindful of the deferential standard of review that we must apply to the IJ's determination, our review of the record requires us to conclude that substantial evidence supports the IJ's adverse credibility finding. Under this standard, there is enough evidence in the record to preclude reversal of the IJ's decision on this ground. *See Elias-Zacarias*, 502 U.S. at 481 n.1 (reviewing court must find that the record "not only supports th[e] conclusion [of reversal], but compels it"). Review of the record confirms these discrepancies, as well as others. Among them is that, regardless of when Petitioner claimed she learned of the alleged police activities concerning her, she was inconsistent as to when they in fact occurred. Petitioner testified that police visits occurred in March, 2001 and on June 29, 2001, but her sworn statement placed those visits in March, 2001 and "at the end of April." Petitioner's explanation at her hearing, wherein she explained that the police would come "many days" if they could not at first find someone, did not resolve this inconsistency. For all of these reasons, we conclude the adverse credibility determination was based on substantial evidence and satisfies new § 1158(b)(1)(B)(iii).

Petitioner next contests the IJ's alternative findings with respect to persecution and

6

a well-founded fear of persecution. In its decision, the IJ found that, even were she credible, Petitioner was nevertheless ineligible for relief because the anticipated arrest that she feared did not constitute persecution. The IJ also found in the alternative that Ms. Lin had not established a well-founded fear of persecution because she had been able to relocate in China without problems, and that her parents, who had continually practiced Falun Gong since 1997, had also been able to remain in China without incident or arrest.

It is well-settled that an alien is not eligible for a discretionary grant of asylum unless he or she carries her burden of showing that she meets the definition of "refugee." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Ezeagwuna v. Ashcroft*, 301 F.3d 116, 126-27 (3d Cir. 2002); 8 C.F.R. § 208.13(a). To qualify as a "refugee," one must be "unable or unwilling" to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Fatin v. INS*, 12 F.3d 1233, 1238 (3d Cir. 1993); 8 U.S.C. § 1101(a)(42)(A).

We agree with the IJ that Ms. Lin was not persecuted here. Persecution, as interpreted by the BIA, "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin*, 12 F.3d at 1240. Here, neither Petitioner nor any member of her family was arrested, harassed, threatened, or harmed in any manner. Petitioner's fear of arrest, based on the arrests of two friends and other members of her local Falun Gong group, is not sufficiently severe to constitute persecution, especially in light of the IJ's observation that she subsequently lived in rural China with her aunt for

7

some time without threat or incident of any kind.  *See* 8 C.F.R. § 208.13(b)(2)(ii) ("An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality.").  Here, Petitioner testified that she left Fuzhou City in January 2001 and lived with her aunt in the rural Chinese countryside until coming to the United States in May 2001.  She did not testify to any problems with the police or other authorities during that time.  Instead, she testified that her mother, who also left Fuzhou City due to her practice of Falun Gong, continues to live with Petitioner's aunt in rural China and has not had problems with the police.  Petitioner's testimony also showed that her father, who also practices Falun Gong, has not encountered any problems with police, not withstanding several face-to-face interactions with police concerning Petitioner, her Falun Gong activities, and her disappearance from Fuzhou City in 2001.  [2]

IV.

Finally, Petitioner contends that the IJ erred in refusing to admit and consider four Chinese-language documents pursuant to 8 C.F.R. § 287.6, including an alleged arrest warrant in her name dated June 29, 2001.  Because Petitioner failed to raise this issue before

---

[2]  Because this is a case of alleged government persecution, had Petitioner proven that she was subjected to past persecution, there would have been a regulatory presumption that internal relocation was not reasonable.  *See* 8 C.F.R. § 208.13(b)(3)(ii).  To overcome this presumption, the IJ's finding that Petitioner could reasonably relocate to another area of China would have to be established by a preponderance of the evidence.  *Id.*  Because Ms. Lin does not rebut the above facts, we conclude that they would have satisfied the regulation under the IJ's alternative ruling.

8

the BIA, the issue is not exhausted and we therefore lack jurisdiction to consider it. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003) (an "alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim"); *cf. Bhiski v. Ashcroft*, 373 F.3d 363, 368 (3d Cir. 2004) (holding that failure to file a brief before the BIA did not bar court of appeals' jurisdiction where notice of appeal before the BIA "certainly was sufficient to make the BIA aware of precisely what issues were being appealed").

The record confirms that Petitioner failed to raise this issue in her notice of appeal to the BIA and in her brief that she filed with the BIA supporting that appeal. Here, Petitioner now relies upon only one sentence, found in text located on page 7 of that brief, to support her contention that she adequately raised the issue below. The text identified by Petitioner is an unsupported assertion by Petitioner that she "presented sufficient evidence" showing persecution. It provides no notice to the BIA that Petitioner was challenging the IJ's alleged error in failing to consider Petitioner's arrest warrant and three other Chinese-language documents, notwithstanding their lack of certification pursuant to 8 C.F.R. § 287.6. Nowhere is there any reference to a claim or ground of relief arising from an error of fact or law allegedly committed by the IJ. As such, the BIA did not consider the issue; accordingly, under well-settled exhaustion principles, nor may we.

V.

For the foregoing reasons, we conclude that the IJ's decision is supported by

9

substantial evidence and that we lack jurisdiction to consider Petitioner's unexhausted ground of relief arising under 8 C.F.R. § 287.6. We will therefore deny the petition.