

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-2007

# Rocha v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5324

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Rocha v. Atty Gen USA" (2007). *2007 Decisions.* Paper 262.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/262

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5324
_____

FELIPE VICTOR PEREIRA ROCHA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96 258 085)
Immigration Judge:  Eugene Pugliese
_____

Submitted Under Third Circuit LAR 34.1(a)
September 24, 2007

Before:  McKEE, BARRY and FISHER, *Circuit Judges*.

(Filed:  November 6, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case comes to us on a petition for review of a final order of removal from the

Board of Immigration Appeals ("BIA").  Felipe Victor Pereira Rocha requests that we

find that the immigration judge ("IJ") presiding over his hearing was so biased as to violate his due process rights. In the alternative, he argues that the BIA, in affirming the IJ's decision, erred by denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons set forth below, we will deny his petition.

## I.

Because we write exclusively for the parties who are familiar with the factual context and legal history of this case, we will set forth only those facts necessary to our analysis. Felipe Victor Pereira Rocha was born in Portugal, but his family moved to Venezuela when he was five, where he eventually became a citizen. Although he visited the United States for two weeks as a visitor in 1994, he remained a full-time resident of Venezuela until 1995 when he moved to the United States. Between 1995 and 1998, Rocha lived and worked in the United States, but he traveled to Venezuela approximately eight times. In 1999, Rocha was diagnosed as being HIV positive, and during his illness, his then-current visa expired. On April 1, 2003, Rocha was placed in removal proceedings. He conceded removability, but filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

At a subsequent hearing, Rocha testified that he decided to file an asylum claim after he became ill and learned that Venezuela does not have the same treatments for HIV and AIDS that the United States has. He also testified that he had been harassed in Venezuela because of his homosexuality. In particular, in or around 1990, the

2

Venezuelan police called him a "whore," struck his boyfriend, and sexually assaulted him with a gun, but he did not report the incident. In addition to Rocha's testimony, he presented the IJ with articles and reports regarding conditions in Venezuela. These articles described his brother's death,[1] detailed the treatment of homosexuals, transgendered individuals, and cross-dressers in Venezuela, and detailed the treatment of those with HIV or AIDS in Venezuela.

The IJ found that Rocha's asylum application was untimely with no excuse of exceptional circumstances, and Rocha had failed to provide sufficient evidence to prove that he was entitled to withholding of removal or relief under the CAT. The BIA adopted and affirmed the IJ's decision. Rocha timely filed a petition for review.

## II.

We have jurisdiction to review a final order of removal from the BIA pursuant to 8 U.S.C. § 1252(a)(1).

## A.

Rocha first claims that the IJ was so biased against him that it was a violation of his due process rights.[2] We review *de novo* whether an IJ's bias resulted in a violation of

---

[1]Rocha claims that the police murdered his brother, who was a homosexual. He provided some testimony about his brother's death, but the IJ stated that he was not sure whether it was relevant how Rocha's brother died.

[2]Before an alien may bring a matter to this Court's attention, he must exhaust his administrative remedies. 8 U.S.C. § 1252(d)(1). A petitioner has exhausted his administrative remedies before the BIA "so long as [he] makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on

3

an alien's due process rights. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595-96 (3d Cir. 2003). At a minimum, due process requires the right to "'be heard at a meaningful time and in a meaningful manner.'" *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). In the immigration context, then, "due process requires that aliens threatened with deportation are provided the right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf." *Abdulrahman*, 330 F.3d at 596 (internal quotation marks and citation omitted). In order to ensure such a "full and fair hearing," an alien facing removal proceedings is entitled to an IJ who is neutral and impartial. *Id.*

An IJ's statements and behavior while conducting a hearing may rise to the level of a due process violation where the IJ insults and belittles a petitioner. *See Wang v. Att'y Gen.*, 423 F.3d 260, 265-69 (3d Cir. 2005) (calling the petitioner a "horrible parent," and stating that she found it "infuriating" that Wang "never even one time did anything honest"). However, mere discourtesy on the part of an IJ is insufficient to constitute a due process violation. *See Abdulrahman*, 330 F.3d at 597 (stating that a due process violation had not occurred even though the IJ's language "reflect[ed] an annoyance and dissatisfaction with [the alien]'s testimony that is far from commendable").

_____

appeal." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005) (citing *Bhiski v. Ashcroft*, 373 F.3d 363, 367-68 (3d Cir. 2004)). Rocha raised the issue of bias, and therefore, the BIA was on notice that this bias could have affected any of the types of relief Rocha sought to establish.

4

In support of his claim that the IJ was biased, Rocha points to two portions of the record. The IJ questioned Rocha regarding (1) whether he has HIV or AIDS; and (2) his receipt of federal funds to pay for his AIDS medication. While the IJ seemed annoyed during these portions of the hearing, his statements and overall behavior were not so severe that he abdicated his role as a neutral and impartial arbiter. Therefore, the IJ's behavior did not rise to the level of a violation of Rocha's due process rights.[3]

B.

Rocha petitions for review of the IJ's denial of his applications for asylum, withholding of removal, and protection under the CAT.[4] Where, as here, the BIA has adopted a portion of the IJ's decision, we review the decisions of both the BIA and the IJ. *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007). We review the factual

---

[3]Rocha also argues that the IJ's bias led him to improperly refuse to consider two pieces of evidence: (1) his brother's death; and (2) a policy statement from the Office of the General Counsel regarding HIV and AIDS policies. With regard to his brother's death, although the evidence may have been relevant to his claim, he cannot demonstrate that the failure to present this evidence potentially affected the outcome of his case because substantial evidence supported the IJ's determination. *See Cham v. Att'y Gen.*, 445 F.3d 683, 693-94 (3d Cir. 2006) (holding that the persecution of an alien's family members can be relevant to an alien's asylum claim, but the alien would also need to demonstrate that not admitting the evidence prejudiced his claim). With regard to the policy statement, the IJ did not err in his refusal to accept it as evidence because he is not bound by the policy statement, and further, counsel did not comply with the IJ's internal procedure to submit all documentation ten days prior to the hearing. For the reasons described above, we find these arguments unavailing.

[4]We may not review Rocha's asylum claim. The IJ and BIA properly found that Rocha failed to file an application for asylum within one year of his last entry into the United States, and we may not review their determination that Rocha failed to show extraordinary circumstances relating to his delay in filing. *See* 8 U.S.C. § 1158(a)(2)(B), (3).

5

determinations of the BIA and IJ for substantial evidence, and uphold the decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal quotation marks and citation omitted). "[T]he BIA's [and IJ's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

Pursuant to the Immigration and Nationality Act, the Attorney General may not remove an alien to his country of origin if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In order to qualify for withholding of removal under § 1231, an alien must show the threat by a clear probability. *INS v. Stevic*, 467 U.S. 407, 430 (1984). "A clear probability means 'more likely than not.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003) (quoting *Stevic*, 467 U.S. at 429-30).

Here, substantial evidence supports the IJ's determination that Rocha failed to show that it was more likely than not that his life or freedom would be threatened in Venezuela based on his sexual preference. His decision to remain in Venezuela for many years after the alleged abuse and his eight extended trips to Venezuela after he moved to the United States undercut Rocha's claim that his life or freedom would be threatened in Venezuela. Moreover, he stated that he decided to file for asylum because of the lack of medication in Venezuela, and the IJ found that was the real reason for his application.

6

Based on the record as a whole, reasonable, substantial, and probative evidence existed for the IJ's conclusion that Rocha did not qualify for withholding of removal.

In order to meet the requirements for protection under the CAT, an applicant must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). Rocha has not provided any evidence that rises to the level of torture. Therefore, substantial evidence also supports the BIA's and IJ's decision that Rocha was ineligible for relief under the CAT.

## IV.

For the reasons set forth above, we will deny Rocha's petition for review.