

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-2-2006

# Joseph v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-1047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Joseph v. Atty Gen USA" (2006). *2006 Decisions.* Paper 267.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/267

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-1047 and 05-2889

———

WARREN HILARION EUSTA JOSEPH,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review from an Order Dated
December 10, 2004 of the Board of Immigration Appeals
(Board No. A41-090-468)
Immigration Judge Daniel A. Meisner

———

Argued July 13, 2006
Before:  SMITH, WEIS and ROTH, Circuit Judges.

(Filed:   October 2, 2006)

Claudia Slovinsky, Esq. (Argued)
396 Broadway, Suite 601
New York, NY  10013
        Attorney for Petitioner

Peter G. O'Malley, Esq.
Office of United States Attorney
970 Broad Street, Suite 700
Newark, NJ  07102

Jonathan Potter, Esq. (Argued)
Linda S. Wernery, Esq.
Douglas E. Ginsburg, Esq.
John D. Williams, Esq.
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
        Attorneys for Respondent

———

## OPINION OF THE COURT

———

WEIS, Circuit Judge.

The issue in this case is whether the petitioner's conviction under 18 U.S.C. § 922(a)(3) constitutes an "aggravated felony" of "illicit trafficking in firearms" under

2

Immigration and Nationality Act ("INA") §§ 101(a)(43) and 237(a)(2)(A)(iii). 8 U.S.C. §§ 1101(a)(43)(C), 1227(a)(2)(A)(iii). We conclude that the petitioner's offense is not an aggravated felony under the INA because § 922(a)(3) does not include a "trafficking element."

Petitioner Warren Hilarion Eusta Joseph, a lawful permanent resident of the United States and a native and citizen of Trinidad, is subject to a removal order under §§ 237(a)(2)(A)(iii) and (a)(2)(C) of the INA, 8 U.S.C. § 1227 (a)(2)(A)(iii) & (a)(2)(C), on the grounds that his conviction under 18 U.S.C. § 922(a)(3) constituted an "aggravated felony" and a removable "firearms offense."

From 1988 to 1997, petitioner served in the United States Army, including service in Operation Desert Storm and Operation Desert Shield. During this enlistment he received numerous awards and was honorably discharged in 1997.

On October 10, 2001, petitioner was convicted in the United States District Court for the Eastern District of New York for violations of 18 U.S.C. §§ 922(a)(3) and 924(a)(1)(D). Section 922(a)(3) makes it illegal for a person, other than a licensed importer, dealer or manufacturer, to transport into or receive in the state where he resides firearms purchased or otherwise obtained by that person outside of his state of residence. Id. Section 924(a)(1)(D) provides that it is illegal to "willfully violate[] any other provision of this chapter," which includes § 922.

3

In sentencing petitioner, the court departed downward from the then-mandatory sentencing guidelines range and imposed probation only. Petitioner, however, violated his probation by, *inter alia*, failing to inform his probation officer that he had moved and for failing a drug test. He was incarcerated for six months for those violations.

The government initiated removal proceedings and an immigration judge conducted a hearing on July 12, 2004. Petitioner testified about his criminal conviction, admitting that he obtained weapons for persons to whom he owed money. He further testified that he had turned himself in to authorities when ATF contacted him and that he later pleaded guilty to violations of §§ 922(a)(3) and 924(a)(1)(D).

Petitioner filed for asylum, withholding of removal, and relief under the Convention Against Torture. He testified that he believed he would be persecuted if he returned to Trinidad because he is Christian and because he served in the United States Army. Petitioner also argued that he is a national of the United States under 8 U.S.C. § 1101(a)(22), and is thus not an alien subject to removal. He based this claim on the fact that he took the Oath of Enlistment upon entry into the United States Army and thus is "a person who, though not a citizen of the United States, owes a permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

The IJ concluded that (1) petitioner was not a national of the United States; (2) he was removable because he was convicted of a weapons violation and because he was convicted of an aggravated felony; (3) he was not eligible for asylum

4

because he had been convicted of an aggravated felony; and (4) he was not *prima facie* eligible for naturalization because the aggravated felony conviction prohibited him from establishing that he has "good moral character."

In his appeal to the BIA, petitioner asserted three claims for relief. First, he asserted that the IJ erred in determining that petitioner was not a national of the United States. Second, he argued the government should be equitably estopped from removing him because of the gross delay in deciding earlier applications for removal. Third, he contended that the IJ erred in determining that petitioner was convicted of an aggravated felony. The BIA affirmed the IJ's decision without opinion.

Petitioner then filed a motion with the BIA to reconsider and reopen his case. He argued that the Board impermissibly issued an affirmance without opinion despite the fact that petitioner had raised an issue of law (that a violation of § 922(a)(3) was not an aggravated felony), and (2) that because petitioner had recently reapplied for naturalization, the BIA should set his case aside pending resolution of that application.

The BIA denied the motion, concluding that petitioner "in his request for reconsideration, primarily reiterates the arguments raised on appeal regarding his removability as an aggravated felon." The BIA noted that it would not hold the petition in abeyance pending resolution of his naturalization application because his aggravated felony conviction prohibited him from establishing *prima facie* eligibility for naturalization.

5

In the proceeding before this Court, petitioner challenges only the findings that his § 922(a)(3) conviction constituted an aggravated felony and that he is not *prima facie* eligible for naturalization.

Petitioner had also filed for habeas corpus relief in the District Court and that case was transferred to this Court pursuant to section 106(c) of the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231. We consolidated the cases. See Belito Garcia, No. 05-2786, 2006 WL 2529471, *2 (3d Cir. Sept. 5, 2006). We have jurisdiction over the habeas corpus action as well as the petition for review. However, our review is limited to constitutional and legal questions. Id.

As an initial matter, the Government alleges that petitioner has waived all of his claims because he failed to exhaust his administrative remedies. The government argues that because petitioner has not applied for cancellation of removal, he cannot assert the aggravated felony issue because determination of that matter is only relevant to whether petitioner is now eligible for cancellation of removal. However, whether petitioner has applied for cancellation of removal is irrelevant to whether he has waived the aggravated felony claim.

An alien must exhaust all administrative remedies available to him as of right before the BIA as a prerequisite to raising a claim before this Court. See 8 U.S.C. § 1252(d)(1) (1999); Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005). An applicant must first raise the issue before the BIA or the IJ. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) (citing Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir.

6

1989)). As this Court has recognized, "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." Yan Lan Wu, 339 F.3d at 422 (citing Bhiski v. Ashcroft, 373 F.3d 363, 367-68 (3d Cir. 2004)).

Petitioner does not argue that we should grant him cancellation of removal. He argues only that 18 U.S.C. § 922(a)(3) is not an aggravated felony, a contention that he clearly raised before the BIA and thus exhausted. He discusses cancellation of removal only to explain one of the reasons why the aggravated felony claim is relevant and not moot.

The government's exhaustion claim is meritorious, however, with respect to the petitioner's claim he is *prima facie* eligible for naturalization. The government argues that petitioner failed to raise before the Board his claim that, because he can demonstrate that he has "good moral character," he is *prima facie* eligible for naturalization. In neither his motion to reconsider and reopen nor in his brief in support of his appeal to the Board did petitioner contest the IJ's determination of ineligibility for naturalization.

Under the liberal exhaustion policy outlined in Bhiski and Yan Lan Wu, an alien need not do much to alert the Board that he is raising an issue. In Bhiski, the petitioner did not file a brief in support of his appeal to the BIA. He did, however, identify the issues that he later raised before us. 373 F.3d at 368-69.

7

In Yan Lan Wu, the petitioner failed to allege in her Notice of Appeal to the BIA that the IJ erred in considering only one interview that the government had with her. However, she did contend in her Notice of Appeal that the IJ's conclusion was not supported by substantial evidence and that she had presented sufficient evidence in support of specific facts underlying her asylum claim. 393 F.3d at 422.

In the present case, by contrast, petitioner did nothing to alert the BIA that he wished to appeal the IJ's determination that he was not *prima facie* eligible for naturalization.

Petitioner is removable by reason of having committed a criminal offense covered by § 1227(a)(2)(C), which provides that aliens are removable if they are "convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying . . . any weapon, part, or accessory which is a firearm or destructive device . . . in violation of any law." Section 922(a)(3) clearly falls under the broad umbrella of weapons crimes covered by § 1227(a)(2)(C), which include "possessing" and "carrying" and petitioner does not challenge this.

That petitioner is removable as a result of having committed a firearms offense, however, does not moot his claim that he was not convicted of an "aggravated felony." The petitioner's eligibility for a cancellation of removal depends upon resolution of this issue. See 8 U.S.C. § 1229b(a)(3); see also Kuhali v. Reno, 266 F.3d 93, 107 (2d Cir. 2001) (concluding that the issue of whether the alien committed an "aggravated felony" was "not mooted by the . . . determination

8

that he is removable as an alien convicted of a firearms offense" because his eligibility for a voluntary departure hinged on that point). Moreover, an aggravated felony determination would prevent petitioner from reentering the United States for twenty years. See 8 U.S.C. § 1182(a)(9)(A)(ii).

8 U.S.C. § 1101(a)(43) defines the term "aggravated felony" by reference to several crimes. The inquiry here is confined to § 1101(a)(43)(C), which provides that an aggravated felony includes "illicit trafficking in firearms . . . ."

The issue is whether § 922(a)(3), which makes it illegal "for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that state . . . ," qualifies as a crime of "illicit trafficking in firearms."

We generally employ the "formal categorical approach," announced in Taylor v. United States, 495 U.S. 575 (1990), in determining whether an offense falls within the category of "aggravated felony." See Singh v. Ashcroft, 383 F.3d 144, 140 (3d Cir. 2001). Using that analysis, a court "must look only to the statutory definitions" of the specified offense, and may not "consider other evidence concerning . . . the particular facts underlying [a] conviction[ ]." Taylor, 495 U.S. at 600.

We apply that approach unless (1) "the language of the particular subsection of 8 U.S.C. § 1101(a)(43) at issue . . . invite[s] inquiry into the underlying facts of the case," or (2) "the disjunctive phrasing of the statute similarly invites

9

inquiry into the specifics of the conviction." Singh, 383 F.3d at 148; see also Belito Garcia, 2006 WL 2529471, at *3 (citing Singh, 383 F.3d at 161).

Neither of these exceptions applies to § 922(a)(3). As we explained in Singh, the prototypical example of a statute that invites inquiry into the facts underlying the conviction at issue is 8 U.S.C. § 1101(a)(43)(M)(i), which includes the qualifier "in which the loss to the victim or victims exceeds $10,000." Singh, 383 F.3d at 161. We observed that that phrase "expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue." Id. By contrast, statutory phrases that have "relatively unitary categorical concepts" like "forgery," "burglary," "crime of violence," and "illicit trafficking in a controlled substance" do not invite an inquiry into the facts underlying the conviction. Belito Garcia, 2006 WL 2529471, at *3 (citing Singh, 383 F.3d at 156 n.4, 161).

The statutory phrase under scrutiny here, "illicit trafficking in firearms," falls well within the category of unitary categorical concepts, where there is no invitation to inquire into the specific facts underlying the conviction.

Section 922(a)(3) also does not have any relevant disjunctive language. A conviction based on any part of the disjunctions would not constitute a conviction for "illicit trafficking." See, e.g., Ng v. Attorney General, 436 F.3d 392, 397 (3d Cir. 2006) (noting that "although 18 U.S.C. § 1958 is phrased in the disjunctive with respect to the type of interstate

10

commerce facility involved, this inquiry has no bearing on whether the crime is one of violence").

We recognized in <u>Singh</u> that "[s]tatutes phrased in the disjunctive are akin to, and can be readily converted to, statutes structured in outline form, with a series of numbered or letter elements." <u>Id</u>. at 162. Thus, we can convert § 922(a)(3) into the following:

> It shall be unlawful for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to:
>
> (a) transport into the State where he resides . . . any firearm purchased by such person outside that State;
>
> (b) transport into the State where he resides . . . any firearm otherwise obtained by such person outside that State;
>
> (c) receive in the State where he resides . . . any firearm purchased by such person outside that State;
>
> OR
>
> (d) receive in the State where he resides . . . any firearm otherwise obtained by such person outside that State.

11

The next step, under <u>Singh</u>, is to determine whether a violation of some of those sections, but not others, would constitute an aggravated felony. In conducting this inquiry, "only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." <u>Canada v. Gonzales</u>, 448 F.3d 560, 565 (2d Cir. 2006) (internal citations and quotations omitted). It is necessary that conduct required for any conviction under the statute amounts to an aggravated felony. <u>See</u> <u>Singh</u>, 383 F.3d at 153 ("what matters is whether such conduct is *necessary* for such a conviction") (emphasis in original). Only if the minimum conduct required to sustain a conviction under any part of the statute would constitute an aggravated felony, do we look to the charging document or other facts.

Thus, we must determine whether the minimum conduct necessary to sustain a conviction under the various terms of § 922(a)(3) constitutes weapons "trafficking." The INA does not define "trafficking" and when the relevant statute does not define a word, "we normally construe it in accord with its ordinary or natural meaning." <u>Smith v. United States</u>, 508 U.S. 223, 228 (1993). Black's Law Dictionary defines "traffic" as a verb meaning, "To trade or deal in (goods, esp. illicit drugs or other contraband)"). Black's Law Dictionary (8th ed. 2004). Black's also defines traffic as a noun that includes "1. Commerce; trade; the sale or exchange of such things as merchandise, bills, and money" and "2. The passing or exchange of goods or commodities from one person to another for an equivalent in goods or money." <u>Id</u>.

12

Webster's New International Dictionary defines traffic as a verb meaning "to engage in commercial activity; buy and sell regularly" and "to engage in illegal or disreputable business or activity." Webster's New International Dictionary (3d ed. 1966). Webster's also defines traffic as a noun meaning "commercial activity usually involving import and export trade"; "the activity of buying or bartering and selling"; and "illegal or disreputable usually commercial activity." Id.

In Gerbier v. Holmes, 280 F.3d 297 (3d Cir. 2002), this Court considered the use of the phrase "illicit trafficking" in § 1101(a)(43)(B), which provides that an "aggravated felony" includes "illicit trafficking in a controlled substance." In that case, defendant was convicted under a state statute which, though called "trafficking," punished mere possession. Id. at 314-15. We held that the state crime was not a crime of "trafficking" because "trading or dealing" in controlled substances was not an element of the offense. Id. at 305. In that case, defendant "did not plead guilty to distribution, solicitation, or possession with intent to distribute or any other fact suggesting that he was trading or dealing in cocaine." Id. at 313-14.

Similarly, § 922(a)(3) does not include any element of "dealing in firearms" and in fact encompasses the legal purchase in another state of a firearm and the subsequent transport of that firearm to an individual's home state. The statute does not require that the purchase and transportation or receipt of the weapon be accompanied by any intent to sell or otherwise distribute the firearm to another individual. The plain meaning of "illicit trafficking of firearms" requires some element of

13

illegal trading and dealing of firearms, an element which is totally absent from § 922(a)(3). The mere movement of an article in interstate commerce does not constitute "trafficking."

It is not necessary to prove that a defendant engaged in trafficking to sustain a conviction under any of the subsections of § 922(a)(3) and thus we do not have occasion to look to the charging document, or any other facts.

This is quite unlike the situation in <u>Belito Garcia</u>, where some parts of the Pennsylvania statute involved in that case required "trading or dealing" as an element of the offense, while others did not. <u>Belito Garcia</u>, 2006 WL 2529471, at * 4 n.9. In that case, it was appropriate to consider the charging document to determine whether the petitioner was convicted under a part of the statute that required trading and dealing.

Because Joseph's § 922(a)(3) conviction was not an aggravated felony of "illicit trafficking in firearms" under § 1101(a)(43)(C), we will grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

14