

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# Khan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1097

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Khan v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1601.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1601

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1097
_____

IMRAN HABIB KHAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96 427 028)
Immigration Judge:  Alberto J. Riefkohl
_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2007

Before:  SMITH and FISHER, *Circuit Judges*, and DIAMOND,[*] *District Judge*.

(Filed: February 16, 2007)
_____

OPINION OF THE COURT
_____

_____

[*]The Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Imran[1] Habib Khan seeks review of the order of the Board of Immigration Appeals ("BIA") denying his applications for withholding of removal and protection pursuant to the Convention Against Torture ("CAT"). For the reasons set forth below, we will deny the petition.

I.

Because we write only for the parties, who are familiar with the factual and legal background of this case, we will recite only those facts necessary to our review. Khan, a native and citizen of Bangladesh, has been in the United States since 1993, initially as a tourist and then on a student visa. After he left school for financial reasons, Khan was placed in removal proceedings on June 12, 2003, for failure to comply with the conditions of the nonimmigrant status under which he was admitted. At his September 24, 2004 hearing, Khan admitted the factual allegations and conceded removability. However, he sought withholding of removal and protection under the CAT.

At his hearing, Khan argued that he had previously faced persecution in Bangladesh and would more likely than not be persecuted again upon his return. He premised this argument on several troubling incidents in Bangladesh. Khan stated that he had returned to Bangladesh in 1997 to get married. While there, he received two or three

_____

[1]Khan's name is spelled at least three different ways in the papers accompanying his petition. Our review of the proceedings suggest the proper spelling is Imran. Therefore we will use that spelling.

threatening phone calls from Muslim fundamentalists, who were part of a political party known as Jama'at-e-Islam, warning that he would be killed for being an atheist. Khan did nothing to respond to the calls. Khan returned to Bangladesh in 1999. He testified that during the two-month period he was there, he was cursed at on the street, was refused service in stores in his neighborhood, and received as many as three or four phone calls a day threatening his life. He again claimed that the calls came from members of Jama'at-e-Islam. On one occasion, someone threw a rock at Khan. He was not injured. After he returned to the United States, his parents received two or three threatening calls for him, calls which stopped when Khan's parents informed the callers that Khan was no longer staying with them. Since his return to the United States, Jama'at-e-Islam has regained power in Bangladesh as part of a coalition with the Bangladesh Nationalistic Party. Khan claimed before the Immigration Judge ("IJ") and now claims before us that if he is returned to Bangladesh, he will eventually be tortured or killed by Jama'at-e-Islam for being an atheist.

At Khan's September 24 hearing, the IJ determined that Khan had not met the requirements for withholding of removal or protection under the CAT.[2] While the IJ found that throwing rocks can result in substantial injury, the single instance of rock throwing did not amount to sufficient evidence for withholding of removal. Similarly, the IJ determined that Khan had not addressed the issue but that, if he had, there was

---

[2]Khan could not claim asylum as he had not filed for asylum within the one-year time period. 8 U.S.C. § 1158. He does not appeal this determination.

3

insufficient evidence to support a claim that Khan would be tortured if returned to Bangladesh. This timely petition for review followed.

## II.

We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252(a)(1). Our review of a decision of the BIA is for substantial evidence, considering whether the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal citations omitted). We will overturn the BIA's factual findings only where any reasonable finder of fact would be compelled to conclude otherwise. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). Where, as here, the BIA has adopted wholesale the reasoning of the IJ, we review the IJ's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

Under the withholding of removal provision of the Immigration and Nationality Act ("INA"), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). In order to qualify for withholding of removal, an alien must establish by a "clear probability" that his freedom would be threatened if he returned to his country of nationality. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). In other words, an alien must show that it is more likely than not that, if returned, he would be subject to persecution. *Toussaint v. Att'y General*, 455 F.3d 409,

4

413 (3d Cir. 2006) (internal citations omitted). If an alien proves that he has suffered past persecution, there is a rebuttable presumption that he will suffer future persecution. *Chavarria v. Gonzales*, 446 F.3d 508, 520 (3d Cir. 2006).

Khan argues that the threats he received when in Bangladesh coupled with the rock-throwing incident are sufficient to prove past persecution. We have previously held that threats are sufficient to prove past persecution only in a very narrow set of circumstances. "Threats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Li v. Att'y General*, 400 F.3d 157, 164 (3d Cir. 2005) (internal quotation marks and citations omitted). For example, in *Li* we determined that threats of sterilization and physical violence were insufficient to form a basis for past persecution where the threats were unfulfilled and were not particularly imminent or menacing.

Khan attempts to distinguish his case by arguing that, while the death threats may have been unfulfilled, the incident where a rock was thrown at him proved that the threats had escalated into violence. Based on this, he claims past persecution or, at least, fear of future persecution should he return to Bangladesh. While we have held that unfulfilled threats are properly addressed when considering whether an alien has a fear of future persecution, *id.* at 165, the threats aimed at Khan and the rock-throwing incident are insufficiently imminent and menacing to constitute past persecution or to create a fear of future persecution. In *Chavarria*, for example, we found that death threats coupled with an incident where the men who threatened the petitioner forced him into the trunk of his

5

car at gun and knife point and told him if they ever saw him again he "wouldn't live to tell about it," was sufficient to prove persecution. 446 F.3d at 518. Here, while the threats against Khan and the rock-throwing incident are reprehensible, they do not fall within the "small category of cases" where the threats "are so menacing as to cause significant actual suffering or harm." *Li*, 400 F.3d at 164 (internal quotation marks and citations omitted). *See also Lim v. INS*, 224 F.3d 929, 932-33 (9th Cir. 2000) (holding that threats were insufficient to rise to the level of persecution where petitioner, with police protection, lived six years in the Philippines after receiving death threats and seeing colleagues being murdered one by one); *Boykov v. INS*, 109 F.3d 413, 417-18 (7th Cir. 1997) (holding that threats did not rise to the level of persecution where petitioner faced repeated threats by the communist party, petitioner's friend was found murdered, and the police told him that "now . . . it would be much easier for them to get rid of" him). Therefore, the IJ did not err when determining that Khan had failed to prove fear of future persecution.

III.

Alternatively, Khan argues that he should be allowed protection under the CAT.[3]

In order to qualify for protection under the CAT, an alien must prove that it is more likely

than not that he will be tortured if returned to his country of nationality. 8 C.F.R.

§ 208.16(c)(2); *Gabuniya v. Att'y General*, 463 F.3d 316, 321 (3d Cir. 2006). Torture is

defined as:

> any act by which severe pain or suffering, whether physical or mental, is
> intentionally inflicted on a person for such purposes as obtaining from him
> or her or a third person information or a confession, punishing him or her
> for an act he or she or a third person has committed or is suspected of
> having committed, or intimidating or coercing him or her or a third person,
> or for any reason based on discrimination of any kind, when such pain or
> suffering is inflicted by or at the instigation of or with the consent or
> acquiescence of a public official or other person acting in an official
> capacity.

8 U.S.C. § 208.18(a)(1); *Gabuniya,* 463 F.3d at 321.

Again, while the rock-throwing incident and the threats against Khan are

reprehensible, they are not sufficient to prove that it is more likely than not that Khan will

be tortured if returned to Bangladesh. Without more, Khan's claims of unfulfilled threats,

---

[3]Although the IJ stated that Khan had not addressed a CAT claim, Khan included discussion of the CAT in his initial application for withholding of removal. In addition, as evidenced by the BIA's inclusion of Khan's CAT claim in its short opinion, Khan's passing reference to protection under a torture convention in his brief to the BIA was sufficient to alert the BIA to the fact that he was appealing the IJ's CAT determination. *Joseph v. Att'y General*, 465 F.3d 123, 125 (3d Cir. 2006) ("Under the liberal exhaustion policy outlined in *Bhiski* [*v. Ashcroft*, 373 F.3d 363 (3d Cir. 2004),] and *Yan Lan Wu* [*v. Ashcroft*, 393 F.3d 418 (3d Cir. 2005)], an alien need not do much to alert the Board that he is raising an issue."). This is sufficient for us to retain jurisdiction over Khan's CAT claim.

7

a single rock-throwing incident that did not injure him, and dirty looks on the street do not constitute torture under the CAT.[4]  Therefore, there is substantial evidence to support the IJ's decision that it is not more likely than not that Khan will be tortured upon returning to Bangladesh.

## IV.

For the reasons set forth above, we will deny Khan's petition for review.

---

[4]The case on which Khan relies, *In re O-Z & I-Z*, 22 I & N Dec. 23 (BIA 1988), is distinguishable, as the petitioner in that case was not simply threatened, but suffered repeated beatings, had his apartment vandalized and personal property destroyed, and had a son who was physically assaulted twice.