

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2008

# Guirgis v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1483

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Guirgis v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1483
_____

AYOUB AZIZ GUIRGIS,

Petitioner,


v.


ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.


_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A95-829-976)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2008

Before: SCIRICA, *Chief Judge*, BARRY and HARDIMAN, *Circuit Judges*.

(Filed: May 12, 2008)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Petitioner Ayoub Aziz Guirgis petitions for review of the Board of Immigration Appeals' (BIA) denial of his application for withholding of removal and protection under the Convention Against Torture (CAT).[1]  We will deny the petition.

I.

Guirgis is a native and citizen of Egypt and a practicing Coptic Orthodox Christian.  He was active in his church throughout his youth and eventually became a deacon.  Until the age of nineteen, Guirgis encountered no resistance to his religious beliefs or practices.

On May 12, 1990, while Guirgis was marching in a funeral procession from his church in Alexandria, Egyptian police harassed and beat the participants.  Guirgis testified that he was beaten, shoved into a police car, and taken to the station where he was beaten further, and lost consciousness.  Guirgis was later informed that his father retrieved him from the police station and took him to a medical clinic where he regained consciousness.  After this incident, Guirgis moved to his family's summer home in El Agamy, Egypt.

---

[1]  Guirgis also argues that the Immigration Judge (IJ) "abused his discretion when determining what evidence was admissible."  Because Guirgis failed to raise this claim before the BIA, it is waived.  *See Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006). In any event, the claim lacks merit.  *See Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006).

In El Agamy, Guirgis had an altercation with his neighbor, an Islamic extremist named Isham. On March 15, 1991, as Guirgis was returning from his father's store, Isham insulted Guirgis's religion and told him to stop playing his religious music and to get rid of his dogs, which were "filthy" and "dirty" according to Isham's religion. Guirgis countered, "according to Islam, when you die you're going to have 40 women that you will sleep with . . . what happens when your mother dies, is she going to have 40 men to sleep with?" This comment so incensed Isham that he stabbed Guirgis in the side. Guirgis was taken to a clinic, but his injury resulted in permanent nerve damage.

On November 11, 1992, Guirgis left Egypt for Austria, where he remained for four years. While in Austria, an unidentified person broke into Guirgis's apartment and stole his diary. The diary contained Guirgis's thoughts on Islam, and Guirgis feared, based on a warning from his father, that "there were people looking for [him]" who "were . . . gonna beheaded [*sic*] [him] and hang [his] head at the door."

Afraid to remain in Austria or return to Egypt, Guirgis entered the United States on September 24, 1996. His parents and siblings remain in Egypt, where, according to Guirgis, they are "doing lots of great things."

On April 8, 2003, Guirgis was served with a Notice to Appear before an Immigration Judge (IJ). Guirgis requested withholding of removal and CAT protection. The IJ denied his application on January 3, 2006, and the BIA affirmed on January 19, 2007.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a).  Because the BIA adopted the IJ's decision and expanded upon it, we review both decisions.  *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).  We employ the familiar substantial evidence standard, overturning the agency's decision only if record evidence compels us to do so.  8 U.S.C. § 1252(b)(4); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007).

### A.

An alien is eligible for withholding of removal if he can show that it is "more likely than not" that he will be persecuted on account of his "race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b).  Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but not "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."  *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993).  Furthermore, the persecution must come at the hands of the government or forces the government is unable or unwilling to control.  *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005); *Gao v. Ashcroft*, 299 F.3d 266 , 272 (3d Cir. 2002).  A rebuttable presumption of future persecution arises if the alien successfully demonstrates past persecution.  8 C.F.R. § 208.16(b)(1)(i).

4

None of the incidents described by Guirgis qualify him for withholding of removal under the applicable legal standard. The alleged attack by Egyptian police is insufficient because no substantial evidence compels us to conclude that the attack was on account of Guirgis's religion.[2] As the BIA observed, Guirgis could not explain with any specificity why he was arrested,[3] and the police made no reference to his religion.

His alleged attack by Isham is similarly insufficient. *See Amanfi v. Ashcroft*, 328 F.3d 719, 727 (3d Cir. 2003) (distinguishing persecution "on account of religion" from "retaliation in response to a personal dispute"); *see also Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) (criminal activity does not rise to the level of persecution). There is no evidence that Isham was acting at the behest of the Egyptian government or represented a force the government was unable or unwilling to control. *Lie*, 396 F.3d at 537; *Gao*, 299 F.3d at 272. Accordingly, we find that Guirgis suffered no past persecution.

Guirgis's additional testimony, detailing incidents in which individuals stole his diary and confronted his mother and brother about his whereabouts in 1996, does not represent substantial evidence compelling us to find a clear probability of future persecution. 8 C.F.R. § 1208.16(b)(2). Guirgis failed to identify these individuals or

---

[2] It is unclear whether the attackers were Egyptian police. In an affidavit submitted by Guirgis's mother, she said Guirgis told her "he was attacked by Islamic extremists."

[3] Guirgis did speculate, "[m]aybe, because, they were just picking up people that . . . were walking in the procession . . . [m]aybe, because, I'm Christian." Mere uncorroborated speculation is not substantial evidence compelling us to reverse the BIA, however. *See Diallo v. INS*, 232 F.3d 279, 285 (2d Cir. 2000).

their motives, and we cannot assume that they were targeting Guirgis because of his religion or acting with the acquiescence of the Egyptian government. *Id*. Moreover, the record contains evidence that contradicts Guirgis's fear of future persecution insofar as his parents and siblings remain in Egypt where they are "doing lots of great things," *Lie*, 396 F.3d at 537, and recent reports show increasing religious tolerance in Egypt.

Because substantial evidence does not compel us to conclude that it is more likely than not that Guirgis will be persecuted upon his return to Egypt, we will not disturb the BIA's denial of his application for withholding of removal.

B.

Guirgis also requests withholding under the CAT. We find that the incidents discussed above do not compel the conclusion that Guirgis suffered, or is likely to suffer, torture as that term is defined in the CAT implementing regulations. 8 C.F.R. § 1208.18(a). For example, Guirgis submitted no substantial evidence that the Egyptian police beat and arrested him during the funeral procession to obtain information, punish, intimidate, or discriminate against him. § 1208.18(a)(1). Similarly, no substantial evidence suggests that Isham stabbed Gurigis "at the instigation of or with the consent or acquiescence of" the Egyptian government. *Id*. Finally, whatever harassment Guirgis and his family suffered after Guirgis left Egypt, it did not amount to "an extreme form of cruel and inhuman treatment." 1208.18(a)(2). Accordingly, we will not disturb the BIA's denial of Guirgis's CAT application.

6

III.

Having considered all of Guirgis's arguments and finding that no further discussion is necessary, we will deny Guirgis's petition for review.