

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-21-2008

# Tantono v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2242

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Tantono v. Atty Gen USA" (2008). *2008 Decisions.* Paper 202.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/202

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2242
_____

MILAWATI TANTONO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A95-370-408)
Immigration Judge: Donald Ferlise

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 20, 2008

Before: FUENTES, HARDIMAN, and GARTH Circuit Judges.

(Opinion Filed: November 21, 2008)

_____

OPINION OF THE COURT

_____

1

FUENTES, Circuit Judge:

Milawati Tantono, a native and citizen of Indonesia, entered the United States in 2001, and subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). A Catholic of Chinese descent, Tantono claims that she has a well-founded fear of persecution in Indonesia based on her religion and ethnicity. As we explain below, substantial evidence supports the BIA's denial of asylum and withholding of removal. We also find that we lack jurisdiction to review Tantono's application for relief under CAT. Accordingly, we will deny Tantono's petition for review.

## I.

Tantono was born in 1976 in Jakarta, Indonesia. Tantono entered the United States as a non-immigrant in July 2001 and overstayed her visa. In March 2002, she was placed in removal proceedings. Tantono conceded removability, but filed an application for asylum, withholding of removal, and protection under CAT.

In her January 2002 asylum application, Tantono alleged discrimination by the Indonesian government against ethnically Chinese Indonesians. In an attached personal statement, Tantono also alleged that during the 1998 anti-Chinese riots in Indonesia, two friends were raped and her parents' house was "broken and plundered" by native-Indonesian rioters. (App. at 177.)

In May 2003, Tantono submitted a second affidavit providing a new account of the

2

events that occurred during the 1998 riots. In her second affidavit, Tantono alleged that, on May 15, 1998, a group of eight or nine "Indonesian native men," including one in military clothing, broke into her office and stole office equipment. (App. at 141.) Three of the men dragged Tantano and the other two female employees, both also ethnically Chinese, into another room where they were beaten and raped. Tantono saw the rapists insert broken glass into the vagina of one of the women and throw the other woman down a flight of stairs. Tantono lost consciousness, and following the attack was hospitalized for three days for injuries including serious vaginal bleeding. In her affidavit, Tantono explained that she did not make these allegations in her initial asylum application because she was ashamed that she was no longer a virgin. In support of her second affidavit, Tantono submitted a medical note dated May 16, 1998 and a police report dated May 30, 1998. The medical note indicates that Tantono suffered bruising and vaginal bleeding and that she was to be hospitalized for three days. The police report confirms Tantono's account of the attack and her injuries.

At a hearing before the Immigration Judge, Tantono testified consistently with her second affidavit. Tantono added additional claims of purported persecution including regular harassment on her way to church and frequent robberies. Tantono also testified that five months after the riots, she moved to Medan, a city in northern Sumatra, to live with her aunt.[1] During this period, Tantono was afraid to leave the house, but did travel

---

[1] Medan is nearly 1000 miles north of Jakarta.

to the nearby countries of Singapore, Malaysia, and Thailand for a week-long vacation in 2000.

The Immigration Judge found that Tantono was not credible because she did not disclose her alleged rape in her initial asylum application, and because her claim that she was afraid to leave her aunt's home was inconsistent with her international travel. The Immigration Judge further found that "[t]here is absolutely no evidence that the rape of the respondent at work was anything other than a vicious criminal act." (App. at 38.) The Immigration Judge also found that Tantono lived with her aunt for three years "in total peace," and that "she would rest a lot easier" if she returned to her aunt's home rather than to Jakarta. (App. at 39.) The BIA adopted the Immigration Judge's finding that Tantono would not be eligible for asylum even if credible.[2]

## II.

"We have plenary review over questions of law, subject to the principles of deference articulated in Chevron v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694[ ] (1984)." Wong v. Att'y Gen. of U.S., 539 F.3d 225, 231 (3d Cir. 2008) (citations and internal quotation marks omitted). However, we lack jurisdiction to review issues that were not presented to the BIA. 8 U.S.C. § 1252(d)(1); Joseph v. Att'y Gen. of U.S., 465 F.3d 123, 126 (3d Cir. 2006).

---

[2] Because the BIA did not explicitly adopt the Immigration Judge's adverse credibility determination we assume that Tantono was credible for purposes of this petition. Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 191 (3d Cir. 2007)

4

We review factual determinations under the substantial evidence standard. Gabuniya v. Att'y Gen. of U.S., 463 F.3d 316, 321 (3d Cir. 2006). Accordingly, "we may decline to uphold the BIA's findings only if the evidence compels a contrary conclusion." Ahmed v. Ashcroft, 341 F.3d 214, 216 (3d Cir. 2003). Because the BIA adopted portions of the Immigration Judge's opinion, we review those portions directly. Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 191 (3d Cir. 2007).

III.

The Attorney General may grant asylum to an alien in removal proceedings if the alien establishes that he or she is a "refugee" under the Immigration and Nationality Act (INA). 8 U.S.C. § 1158(a), (b). The INA defines "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

Id. § 1101(a)(42)(A). To establish entitlement to withholding of removal, an applicant must show a "clear probability of persecution." INS v. Cardoza-Fonseca, 480 U.S. 421, 444 (1987).

The BIA adopted the Immigration Judge's denial of Tantono's claim for asylum to the extent he found that Tantono had been the victim of street crime rather than ethnic or religious persecution, and that she would be able to return safely to Sumatra. The Court must affirm on the second basis, as discussed below.

5

A.

An asylum applicant who has demonstrated past persecution, is presumed to have a well-founded fear of future persecution.  Gabuniya, 463 F.3d at 324.  However, the government may rebut this presumption by proving by a preponderance of the evidence that the applicant "could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so."  8 C.F.R. § 208.13(b)(1)(i)(B).[3]  In evaluating the reasonableness of internal relocation, "adjudicators should consider . . . whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties."  8 C.F.R. § 208.13(b)(3).

Tantono testified that she lived safely with her aunt for three years in Northern Sumatra before coming to the United States.  While Tantono testified that she was afraid during this period, she admitted that nothing happened to her in Sumatra.  Tantono provided no evidence suggesting that she was in danger in Sumatra.  Accordingly, even if Tantono were the victim of past persecution in Jakarta, or had established a pattern or practice of persecution of Chinese Christians in Indonesia, there is substantial evidence to

---

[3] The government may also rebut a claim based on a pattern or practice of official persecution by showing that internal relocation would be reasonable.  8 C.F.R. § 208.13(b)(3)(ii).

support the Immigration Judge's finding that she could safely and reasonably return to Sumatra. Thus, the Immigration Judge properly denied Tantono's asylum application. For the same reason, we find that the Immigration Judge properly denied Tantono's withholding of removal application.

We also hold that we lack jurisdiction over Tantono's CAT claim because she did not appeal this issue to the BIA. Joseph, 465 F.3d at 126. In any event, our conclusion that Tantono can safely return to Sumatra is inconsistent with relief under CAT.

III.

For the foregoing reasons, we will deny Tantono's petition and affirm the decision of the BIA.