NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3038
_____

ANGEL MAURICIO ZAPATA SUQUILANDA
Petitioner,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA


On Petition for Review of an Order of the Board of Immigration Appeals
(A206-030-966)
Immigration Judge:  Alice Song Hartye
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 11, 2020


Before:  McKEE, AMBRO, and PHIPPS, *Circuit Judges*.

(Filed: June 1, 2020)


_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

Angel Mauricio Zapata Suquilanda, a native and citizen of Ecuador, entered the United States in 2007 without admission or parole, and he now appeals a final order of the Board of Immigration Appeals for his removal. In that order, the BIA rejected Zapata's requests for withholding of removal and for protection under the Convention Against Torture. Zapata premised both requests on his fear of violence in Ecuador, but the BIA determined that any persecution that he experienced or feared arose from a land dispute and was not on account of his membership in a particular social group, which he asserts as his nuclear family. In exercising jurisdiction over his petition, *see* 8 U.S.C. § 1252(a), and in reviewing the BIA's legal conclusions *de novo* and factual findings under the substantial-evidence standard, *see Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 154, 155 (3d Cir. 2009), we will deny Zapata's petition.

Zapata's petition arises in the context of a land dispute that turned violent. In 2000, one of Zapata's neighbors in Ecuador, a man named Victor, sold land to Zapata's mother, but then he demanded the land back. When Zapata's family did not acquiesce, Victor threatened to kill Zapata and his younger siblings. The situation escalated in 2003, when Victor shot Zapata's father in the street. Before fleeing the scene, Victor threatened to kill Zapata, who witnessed the shooting. Shortly afterwards, Zapata moved to his grandmother's house, about two hours away. He lived with her for over three years, until 2007, when he arrived in the United States – reportedly in flight from Victor. Zapata's father recovered from the shooting and left Ecuador in 2005. Zapata's mother and her

other children did not move away; they continue to reside five blocks away from Victor's family. Victor subsequently took possession of the land, and he has not personally threatened Zapata or his family since, although Zapata's family reports neighborhood gossip that Victor still harbors animosity toward them.

Zapata now seeks withholding of removal to prevent his removal to Ecuador. To qualify for such relief, Zapata must demonstrate that it is more likely than not, *see Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011), that his "life or freedom would be threatened" in Ecuador because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); *see also Valdiviezo-Galdamez*, 663 F.3d at 591. A showing of past persecution on account of membership in a protected group creates a rebuttable presumption that an alien would experience similarly motivated future persecution. *See Garcia v. Att'y Gen.*, 665 F.3d 496, 505 (3d Cir. 2011); 8 C.F.R. § 208.16(b). And as with all claims of persecution, the acts must either be committed by the government or by "forces the government is either unable or unwilling to control." *Garcia*, 665 F.3d at 505 (quoting *Sukwanputra v. Gonzales*, 434 F.3d 627, 637 (3d Cir. 2006)).

Zapata contends that the BIA erred in finding an insufficient nexus between his membership in a particular social group (his nuclear family) and his persecution. In so finding, the BIA noted that Zapata's nuclear family, like most nuclear families, should not be assumed to be inherently socially distinct, *see Matter of L-E-A-*, 27 I. & N. Dec. 581, 593-96 (A.G. 2019), and then determined that Zapata's family membership was not

3

one central reason for the feared harm. Instead, the BIA agreed with the Immigration Judge's finding that any persecution would be motivated by "greed or some kind of retribution" related to the land dispute. In reaching that conclusion, the BIA correctly articulated the legal principle that "[t]argeting a family member as a means to an end is not by itself sufficient to establish the required nexus." AR 3. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015) ("Conflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."). And because a reasonable adjudicator would not be compelled to reach a different factual finding, *viz.*, that a nexus existed between the persecution and Zapata's nuclear family, substantial evidence supports the BIA's decision denying the withholding of removal. *See* 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

Zapata raises several other challenges in this appeal, but none of those succeed – either because the BIA did not base its decision on the challenged ground or because Zapata did not administratively exhaust the issue.

First, because the BIA dismissed Zapata's appeal only for a lack of nexus, several of Zapata's additional contentions exceed the scope of appellate review, which is limited to the grounds invoked by the agency for its decision. *See Dia v. Ashcroft*, 353 F.3d 228, 241 (3d Cir. 2003) (en banc); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). While the BIA expressed doubts that Zapata's nuclear family constitutes a particular social group, it did not reach a conclusion on that issue in dismissing Zapata's administrative appeal. Thus, that issue falls outside the scope of appellate review. The

4

same holds true for two findings by the Immigration Judge that Zapata challenged on appeal to the BIA. Those determinations were that the death threat to Zapata was not harm rising to the level of past persecution, *see Chavarria v. Gonzales*, 446 F.3d 508, 518 (3d Cir. 2006), and that the Ecuadorian government was not "unable or unwilling to control Victor," AR 64, *see Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting *Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000). Those findings by the Immigration Judge, *if invoked by the BIA*, may have presented other independent bases for denying Zapata's petition, but the BIA did not rest its decision on those grounds. For that reason, those issues are beyond the scope of appellate review.

Second, Zapata raises two issues that he did not challenge in his administrative appeal to the BIA. He argues that he has a well-founded fear of future persecution and that the BIA erred in denying his request for protection under the Convention Against Torture. But by not appealing those issues to the BIA, Zapata did not place the BIA "on notice of a straightforward issue being raised on appeal." *Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008) (quoting *Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006)). Without doing so, Zapata failed to exhaust administrative remedies. Consequently, those two challenges fall outside the scope of this Court's jurisdiction, *see* 8 U.S.C. § 1252(d)(1); *Lin*, 543 F.3d at 120-21, and do not provide a basis for granting his petition.

In sum, because substantial evidence supports the BIA's decision on the only issue before this Court – the lack of sufficient nexus between persecution and a particular social group – we will deny the petition for review.