**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2425

_____

SUSHILABEN SANJAYKUMAR PATEL; SANJAYKUMAR SOMABHAI PATEL;
F.S.P.; F.S.P.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency Nos. A241-251-828, A241-251-829, A241-251-873 & A241-251-894)
Immigration Judge: Dennis Ryan

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 10, 2026

_____

Before: CHAGARES, Chief Judge, RESTREPO and MONTGOMERY-REEVES,
Circuit Judges

(Filed: June 17, 2026)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7,
does not constitute binding precedent.

CHAGARES, Chief Judge.

Sanjaykumar Somabhai Patel ("Patel"), his wife Sushilaben Sanjaykumar Patel, and their two minor children petition for review of an order by the Board of Immigration Appeals ("BIA"), which dismissed their appeal from an Immigration Judge's ("IJ") order denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition.

I.

We write for the parties and therefore recite only those facts pertinent to our decision. Patel, his wife, and their two children are natives and citizens of India.[1] In India, Patel ran his own business but eventually ran into money trouble. Patel turned to a group of loan sharks and borrowed money from them in August 2022. Unfortunately, Patel was only able to make one payment on his loans and was unable to afford further repayments. Shortly after he began missing payments, Patel was twice attacked by the loan sharks. In February 2023, during the second altercation, the loan sharks punched him repeatedly and threatened to kidnap his daughter.

Patel and his family left India two months later, believing they could no longer live there safely. They arrived in the United States on May 17, 2023, at which point the Department of Homeland Security initiated removal proceedings. Patel and his family filed applications for relief, seeking asylum, withholding of removal, and CAT protection.

---

[1] While Sanjaykumar Somabhai Patel is listed second in the case caption and the agency decisions, the parties agree that he is the lead petitioner.

The IJ denied all relief following a hearing. Relevant here, the IJ concluded that Patel's proffered particular social groups ("PSGs") were not cognizable and that membership in these groups lacked a sufficient nexus to the harms Patel had suffered. Specifically, Patel proffered the following PSGs: (1) individuals who are "harassed, threatened with death, killing their family members, kidnapping their children, and public shaming by the loan sharks due to inability to pay back the loan" and (2) "individuals that seek protection from police due to threats by loan sharks and do not receive any protection as the police will not take action against politically powerful loan sharks and allows them to operate without [sic] impunity." Administrative Record ("A.R.") 64.

Patel appealed to the BIA. On appeal, he conceded that his first proposed PSG was not cognizable but urged that his second proffered PSG was viable. The BIA affirmed the IJ's decision with respect to the second PSG, reasoning that Patel had not demonstrated that this group was socially distinct within Indian society. Moreover, the BIA concluded that Patel had not "meaningfully challenged" the IJ's denial of CAT relief, the IJ's finding that Patel failed to establish that the loan sharks had a motive other than being paid back, or the IJ's finding that the Indian government would be responsive to Patel; the BIA deemed these issues to be forfeited. A.R. 3, 5. Patel filed a timely petition for review.

3

II.[2]

To establish eligibility for asylum, an applicant must show that he or she is "unable or unwilling to return to" his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). We have explained that "[t]he standard for withholding of removal is higher than, albeit similar to, the standard for asylum" and thus, if an applicant "is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal." Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).[3]

As a threshold matter, the Government contends that Patel failed to exhaust his administrative remedies by failing to challenge some of the IJ's findings that are dispositive of his claims for relief. We agree.

We may review "a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This exhaustion requirement "attaches to each particular issue raised by the petitioner." Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 520 (3d Cir. 2024) (quoting Castro v. Att'y

---

[2] We have jurisdiction over Patel's petition for review under 8 U.S.C. § 1252(a)(1). "[T]he existence of a cognizable particular social group presents a mixed question of law and fact, since the ultimate legal question of cognizability depends on underlying factual questions concerning the group and the society of which it is a part." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543 (3d Cir. 2018). We thus "review de novo the ultimate legal conclusion as to the existence of a particular social group, while we review the underlying factual findings for 'substantial evidence.'" Id.

[3] Patel does not advance any argument with respect to relief under CAT.

4

Gen., 671 F.3d 356, 365 (3d Cir. 2012)), abrogated in part on other grounds by Riley v. Bondi, 606 U.S. 259, 267–73 (2025). While § 1252(d)(1) is not jurisdictional, Santos-Zacaria v. Garland, 598 U.S. 411, 419 (2023), "once the government raises the [§ 1252(d)(1)] issue, we must enforce it." Gomez-Gabriel v. Att'y Gen., 146 F.4th 327, 330 (3d Cir. 2025). The standard is not high: all we require is that the "petitioner make[] some effort, however insufficient, to place the [BIA] on notice of a straightforward issue being raised on appeal." Id. (quoting Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006)). When a petitioner "make[s] no such effort, we will not disturb the agency's conclusions." Id. (citation modified).

Patel concedes that he did not challenge the IJ's findings that he failed to demonstrate that his membership in a PSG would be at least one central reason for the persecution. Patel asks us to forgive this failure because our decision in Tipan Lopez v. Att'y Gen., 142 F.4th 162 (3d Cir. 2025) was issued after he filed his BIA appeal. That case is inapposite. There, we disagreed with the BIA's application of the "animus-based test," which requires an applicant to show hostility by the persecutor against the protected ground, because it was inconsistent with the statutory text and the BIA's own precedent rejecting such a test. Id. at 173. Indeed, the BIA had already rejected the animus-based test well before Patel's case. See id. (citing In re Kasinga, 21 I.&N. Dec. 357, 365 (B.I.A. 1996)). The IJ applied the appropriate standard in this case, and Patel does not suggest otherwise. The Tipan Lopez decision therefore does not excuse Patel's failure to raise a nexus challenge before the agency.

5

Because a nexus finding is required for both asylum and withholding of removal, Patel failed to exhaust his administrative remedies on this issue, and because the Government has raised the § 1252(d)(1) issue, we will not disturb the agency's conclusions. Gomez-Gabriel, 146 F.4th at 330.

Even if Patel had exhausted his administrative remedies, Patel's arguments fail on the merits because he has not alleged a cognizable PSG. To be cognizable, a PSG must be "(1) composed of members who share a common, immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Radiowala v. Att'y Gen., 930 F.3d 577, 583 (3d Cir. 2019). "[S]ocial distinction requires 'evidence that the society in question recognizes a proposed group as distinct.'" Id. (quoting S.E.R.L., 894 F.3d at 551).

The BIA concluded that Patel had not demonstrated that his proffered PSG — individuals who seek protection from police due to threats by loan sharks and do not receive any protection because the loan sharks have political power — was socially distinct within Indian society. Patel urges that he submitted evidence demonstrating that "citizens of India who borrow money at exorbitantly high rates of interest" are a "highly visible and distinct group." Patel Br. 16. The BIA, however, correctly noted that Patel's PSG is narrower and the evidence did "not discuss instances in which individuals [who] sought protection from police due to threats by loan sharks did not receive any protection because the loan sharks were political[ly] powerful" nor did he establish that such a group was socially distinct. A.R. 5. Patel concedes that while this was not the "specific foc[us] of [his] evidence," Patel Br. 17, one article in his submission does discuss an

account of police inaction when facing a complaint by an individual who had borrowed money from a loan shark. That singular account is insufficient for us to determine that the agency's conclusion was not supported by substantial evidence.

In sum, even if Patel had properly exhausted his administrative remedies and we were to reach the merits of his claims, the petition would still fail.

## III.

For the foregoing reasons, we will deny the petition for review.