**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1133
_____

ALEX BAIKAY KAMARA,
Petitioner,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from the
Board of Immigration Appeals
(Agency No. A078-783-452)
Immigration Judge: Pallavi S. Shirole
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 18, 2021
_____

Before: CHAGARES*, BIBAS and FUENTES, *Circuit Judges*

(Opinion filed: January 12, 2022)
_____

OPINION**
_____

---

*       Honorable Michael A. Chagares, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on December 4, 2021.
**      This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Alex Baikay Kamara petitions this Court to reverse the decision of the Board of Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") denying his application for protection under the Convention Against Torture ("CAT"). For the reasons explained herein, we will deny Kamara's petition.

I.

Kamara is a citizen of Sierra Leone and a member of the Temne tribe. In 1997, George Adams, a lieutenant in the Sierra Leonean military, sexually assaulted Kamara's sister in front of him, struck Kamara with the butt of an AK-47 rifle, and threatened to kill Kamara if he saw Kamara again.[1]  Kamara later testified against Adams during a military tribunal. Kamara left Sierra Leone in 1999. He was admitted to the United States as a refugee in 2001 and became a lawful permanent resident in 2004.  Kamara has returned to Sierra Leone once since he left—a one-month trip in 2010 to visit the graves of his mother and sister.[2]

In 2018, Kamara was convicted of two criminal offenses in the Superior Court of New Jersey, Camden County: (1) criminal sexual assault in the fourth degree,[3] and (2) endangering the welfare of children in the third degree.[4]  Following these convictions, the Department of Homeland Security ("DHS") initiated removal proceedings against

---

[1] Adams was a member of the Armed Forces Revolutionary Council ("AFRC"), which staged a military coup in May 1997 and wielded political power over Sierra Leone in conjunction with the Revolutionary United Front ("RUF") at the time of these assaults.
[2] Kamara asserts that he was in hiding during his visit. *See* A.R. 151–53.
[3] N.J. Stat. Ann. § 2C:14-3B (2018).
[4] N.J. Stat. Ann. § 2C:24-4A(1) (2018).

Kamara, charging him as removable on two independent grounds under the Immigration and Nationality Act ("INA"): (1) INA Section 237(a)(2)(E)(i) (8 U.S.C. § 1227(a)(2)(E)(i)), for being convicted of a crime of child abuse; and (2) INA Section 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), for being convicted of an aggravated felony of sexual abuse of a minor, as defined in INA Section 101(a)(43)(A) (8 U.S.C. § 1101(a)(43)(A)).

Kamara applied for asylum, withholding of removal, and protection under the CAT. He expressed fear that Adams will torture him if he were to return to Sierra Leone.[5] The IJ sustained the two independent charges of removability against Kamara; denied Kamara's application for asylum, withholding of removal, and protection under the CAT; and ordered Kamara removed to Sierra Leone. Kamara appealed the IJ's decision, but the BIA agreed with the IJ and dismissed Kamara's appeal. Kamara timely filed a petition for review with this Court.

## II.[6]

Kamara raises three issues for review: (1) whether he forfeited his right to challenge the IJ's finding that he was removable for having committed an aggravated felony of sexual abuse of a minor; (2) whether he met his burden for protection under the

---

[5] Kamara also asserted that his distinguishing features—light skin, blonde hair, and green eyes—make him easily identifiable and that the Sierra Leonean government would discriminate against him.

[6] We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252(a) (2021).

CAT; and (3) whether the IJ curtailed his due process right to present evidence of past harm from his refugee record. We address each issue in turn.

A.

Kamara first argues that the BIA erred in concluding that he forfeited his right to challenge the IJ's finding that he committed an aggravated felony of sexual abuse of a minor.[7]

This Court reviews the legal determinations of the BIA, including whether a petitioner forfeited an issue on appeal, *de novo*.[8] We may review a final order of removal only if the petitioner has exhausted all administrative remedies available to the petitioner as of right.[9] A petitioner "is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim."[10] A petitioner is deemed to have exhausted his administrative remedies "so long

---

[7] The BIA concluded that Kamara "waived" his right to challenge the finding that he committed an aggravated felony of sexual abuse of a minor, A.R. 3–4, but we consider this to be an instance of forfeiture since Kamara failed to assert the right timely on appeal. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted); *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) ("'[F]orfeiture is the failure to make the timely assertion of a right,' an example of which is an inadvertent failure to raise an argument.") (quoting *Olano*, 507 U.S. at 733).
[8] *See Alimbaev v. Att'y Gen.*, 872 F.3d 188, 194 (3d Cir. 2017).
[9] 8 U.S.C. § 1252(d)(1) (2021).
[10] *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594–95 (3d Cir. 2003); *see also Lin v. Att'y Gen.*, 543 F.3d 114, 120–21 (3d Cir. 2008) ("Accordingly, a petitioner is deemed to have 'exhausted all administrative remedies,' and thereby 'preserves the right of judicial review,' if he or she raises all issues before the BIA.") (internal citations omitted).

4

as [he] makes some effort, however insufficient, to place the [BIA] on notice of a straightforward issue being raised on appeal."[11]

As previously discussed, the IJ determined that Kamara was subject to removal under two independent INA provisions: (1) INA Section 237(a)(2)(E)(i), for being convicted of a crime of child abuse; and (2) INA Section 237(a)(2)(A)(iii), for being convicted of an aggravated felony of sexual abuse of a minor. Kamara argued to the BIA that the IJ erred in finding him subject to removal under INA Section 237(a)(2)(E)(i), but he did not challenge the IJ's finding of removal under INA Section 237(a)(2)(A)(iii). The BIA concluded that Kamara "d[id] not meaningfully appeal the Immigration Judge's determination that [he] is removable under section 237(a)(2)(A)(iii) of the [INA]," and thus found that Kamara had forfeited this issue.[12]

Kamara posits two grounds for relief, neither of which is persuasive. First, he argues that he exhausted his administrative remedies to obtain judicial review by this Court because the BIA acknowledged (and therefore was on notice) that his appeal was premised, in part, on the alleged erroneous adjudication of his motion to terminate. In that motion, he argued to the IJ that he was not convicted of an aggravated felony of sexual abuse of a minor. The problem with this argument is that Kamara's motion to terminate was only before the IJ and was never before the BIA since Kamara did not

---

[11] *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005) (citing *Bhiski v. Ashcroft*, 373 F.3d 363, 367–68 (3d Cir. 2004)); *see also Abdulrahman*, 330 F.3d at 595 ("Because [the petitioner] could have raised the wrong-standard issue before the [BIA] and failed to do so, review on that ground has been foreclosed.").
[12] A.R. 4. Again, the BIA concluded that Kamara "waived" the issue, but we find this to be an instance in which Kamara forfeited his right to appeal the issue.

appeal the IJ's denial of the motion. Kamara therefore "did nothing to alert the BIA that he wished to appeal" the IJ's determination that he was removable for an aggravated felony of sexual abuse of a minor.[13]

Second, Kamara argues that the exhaustion requirement is satisfied or excused because the BIA considered the issue of the aggravated felony of sexual abuse of a minor *sua sponte*. However, the BIA considered Kamara's removability for sexual abuse of a minor only to find that his forfeiture of this issue on appeal abrogated the need to consider his argument challenging his removability for child abuse, which he explicitly raised in his brief to the BIA. Since the IJ's determination that Kamara was convicted of an aggravated felony of sexual abuse of a minor was a sufficient and independent ground for removal and Kamara forfeited a challenge to that determination, the BIA correctly found that it did not need to consider the IJ's determination of a child-abuse conviction.[14]

Accordingly, the BIA did not err in finding that Kamara forfeited his right to challenge the IJ's finding that he was removable for having committed an aggravated felony of sexual abuse of a minor.

B.

Kamara next argues that the findings underlying the IJ's denial of protection under the CAT were not supported by substantial evidence.

---

[13] *See Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006).
[14] *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

To be eligible for deferral of removal under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."[15] IJs must address two questions when evaluating claims of future torture: (1) a factual question, "what is likely to happen to the petitioner if removed[?]"; and (2) a legal question, "does what is likely to happen amount to the legal definition of torture?"[16] "Torture" is the intentional infliction of severe pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."[17] To determine whether the petitioner has established that a public official will acquiesce to the future torture, the IJ must engage in a second two-part inquiry: (1) a factual determination as to how public officials will likely act in response to the harm that the petitioner fears, and (2) a legal determination of whether the likely response from public officials qualifies as acquiescence.[18] When answering these questions, the BIA must consider "all evidence relevant to the possibility of future torture," including past torture and the possibility of relocating to avoid future harm.[19]

This Court applies a "highly deferential" substantial-evidence standard of review to factual determinations, meaning that the "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."[20] "If a

---

[15] 8 C.F.R. §§ 208.16(c)(2), 1208.16(c)(2) (2020).
[16] *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)).
[17] 8 C.F.R. § 1208.18(a)(1) (2020). This was the definition in effect at the time of the IJ's decision on July 17, 2020.
[18] *Myrie*, 855 F.3d at 516.
[19] 8 C.F.R. § 1208.16(c)(3) (2020).
[20] *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence."[21] We review legal conclusions *de novo*.[22]

The IJ found that Kamara's testimony was credible, and that Kamara had sufficiently corroborated his claim. Nonetheless, the IJ concluded that Kamara had not met his burden of demonstrating eligibility for deferral of removal under the CAT because he had not established that he will more likely than not suffer torture if returned to Sierra Leone. The IJ noted that Kamara returned to Sierra Leone in 2010 without incident, that the Sierra Leonean government had not acquiesced or was willfully blind to Kamara's past harm since the government invited Kamara to testify against Adams, and that the *Sierra Leone 2019 Human Rights Report* from the U.S. Department of State indicates that there have not been any arbitrary or unlawful killings or reports of torture in Sierra Leone since the new administration.

With respect to potential discrimination that Kamara may experience as a member of the Temne tribe, the IJ found the evidence to be insufficient to demonstrate that Kamara would be targeted for this reason or that any such harm would be severe enough to constitute torture. Furthermore, the IJ concluded that Kamara could live in other areas of the country aside from Freetown, again citing Kamara's previous visit in 2010 as evidence that Kamara could return without harm and that any resulting harm, including discrimination, would not constitute torture.

---

[21] *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).
[22] *Myrie*, 855 F.3d at 515.

The BIA agreed that Kamara had not met his burden of establishing that he will more likely than not suffer torture upon his return to Sierra Leone. Specifically, the BIA concluded that Kamara had not identified any clear error in the IJ's factual findings or legal conclusions.

Substantial evidence supports the denial of Kamara's torture claim under the CAT. Consistent with the obligation to consider "all evidence relevant to the possibility of future torture,"[23] both the IJ and the BIA weighed Kamara's evidence and found that Kamara had not established that he will more than likely be tortured if returned to Sierra Leone. The IJ found Kamara's testimony to be credible and Kamara's claim to be corroborated. However, credibility and corroboration do not necessarily mean that Kamara automatically satisfies his burden of proof. The IJ must still weigh the evidence to determine what is more than likely to happen. Based on the administrative record, a reasonable fact finder could conclude that Kamara would not more than likely be tortured. In particular, we note that Kamara already returned to Sierra Leone for a month without incident, there is no indication that he cannot relocate to other areas of the country, the evidence supports that the government does not consent or acquiesce to torture, and the government's response to Kamara's past harm demonstrates that the government did not previously consent or acquiesce to torture. Furthermore, in light of the record, we agree that any potential harm or discrimination that Kamara may experience would not rise to the level of torture.

---

[23] *See* 8 C.F.R. § 1208.16(c)(3).

Accordingly, the BIA did not err in finding that the IJ's decision was supported by substantial evidence.

## C.

Finally, Kamara argues that the IJ failed to facilitate the production of evidence and thereby curtailed his due process rights to present evidence of his refugee record at his merits hearing. Kamara also argues that the IJ ignored that past torture is probative evidence of the likelihood that an individual will be tortured again in the future.

Individuals facing removal are entitled to due process, the fundamental requirement of which is "the opportunity to be heard at a meaningful time and in a meaningful manner."[24] In adjudicative contexts, such as a removal proceeding, due process requires three elements: (1) that the individual be entitled to "factfinding based on a record produced before the decisionmaker and disclosed to" him; (2) that the individual be allowed to make arguments and present evidence on his own behalf; and (3) that the individual have the right to an individualized determination of his interests.[25] To establish a violation of due process, the individual must show a violation of one of the three requirements above, as well as an initial showing of substantial prejudice,[26]

---

[24] *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[25] *Id.* (quoting *Llana–Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994)); *see also B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021).

[26] *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005).

10

meaning "a 'reasonable likelihood' of a different outcome" in the absence of the alleged error.[27] We review *de novo* claims of denial of due process.[28]

Kamara requested a continuance of the merits hearing so that he could receive a copy of the records of his previous refugee application from DHS. The IJ granted the request in a form order. Kamara then filed a motion to subpoena his refugee records from DHS, which the IJ denied. The BIA found that Kamara's due process rights were not violated because Kamara "ha[d] not meaningfully asserted how obtaining his records regarding what he experienced in the past would help establish that it is more likely than not that he would be tortured in the future."[29] The BIA also determined that the IJ viewed Kamara's testimony about past events as credible.

Kamara has not shown that he was prejudiced by the IJ's denial of the motion to subpoena his refugee records. Kamara himself conceded in his brief to the BIA that he did not remember presenting documents or non-testimonial evidence at his refugee interview.[30] The only evidence that Kamara contends would be part of the refugee record is testimonial evidence that he gave to the U.S. Government recounting incidents with Adams. Kamara presented this testimonial evidence to the IJ without needing his refugee

---

[27] *Fadiga v. Att'y Gen.*, 488 F.3d 142, 160 (3d Cir. 2007) (quoting *United States v. Charleswell*, 456 F.3d 347, 361 (2006)).
[28] *Id.* at 154.
[29] A.R. 6.
[30] Earlier, during the July 17, 2020 hearing, Kamara testified that the only documents that he provided to the U.S. Government as part of his refugee packet were a high school ID and a paper from the embassy of the Republic of The Gambia saying that he is from Sierra Leone. A.R. 159–61. Neither of these documents are necessary to support his report of past harm, and he does not mention these documents in his briefs to either the BIA or this Court.

record, and he does not allege what other evidence may be in the refugee record that could have aided in his removal proceeding. Furthermore, Kamara has not shown that the IJ ignored his testimony of past harm. The IJ considered Kamara's testimony of past harm and presumed the testimony to be credible.

Kamara also asserts that "[v]iolations of regulations promulgated to protect fundamental statutory or constitutional rights need not be accompanied by a showing of prejudice to warrant judicial relief."[31] However, the only regulations that Kamara identifies that were allegedly violated are 8 C.F.R. § 1240.10(a)(4), requiring an IJ to *advise* an individual that he will have a reasonable opportunity to examine and object to the evidence against him, to present evidence in his or her own behalf, and to cross-examine witnesses presented by the Government; and 8 CFR §§ 208.16(c)(3)(i) and 1208.16(c)(3)(i), both requiring an IJ to consider all evidence relevant to the possibility of future torture, including evidence of past torture, when assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal. The record does not support a finding that the IJ violated any of these regulations with respect to the refugee records. Kamara does not allege that the IJ failed to *advise* him of his right to present evidence, and the record does not show that the IJ ignored evidence of past torture in determining the possibility of future torture. Even if a showing of prejudice were not necessary, Kamara has not established a regulatory violation to warrant relief.

---

[31] Pet. Br. at 22–23 (quoting *Leslie v. Att'y Gen.*, 611 F.3d 171, 178 (3d Cir. 2010)).

Accordingly, the BIA did not err in finding that Kamara's due process right to present evidence of his past harm was not violated.

III.

For the foregoing reasons, we will deny Kamara's petition for review.